OPINION OF THE COURT
John S. Conable, J.
This CPLR article 78 proceeding was commenced to attack the legality of disciplinary procedures in use at the Attica Correctional Facility. At issue is whether such procedures may be given legal effect even though they were adopted pursuant to an administrative order and not filed with the Department of State. The petitioners contend that hearings conducted under this new system violated rights guaranteed to inmates under prior regulations and by court decisions interpreting the due process clause (see Wolff v McDonnell, 418 US 539).
Prior to February of 1983, disciplinary hearings were conducted pursuant to regulations filed with the Department of State and published at 7 NYCRR parts 252 and *446 253. In an order dated February 1, 1983, Commissioner Thomas A. Coughlin suspended these provisions from a period running from February 2, 1983 through May 2, 1983, and adopted superseding parts 251A, 251B, 251C, 251D, 252,253, 254, 255 and 270 (hereinafter referred to as the three-tier system). The effective period was subsequently extended. However, the procedures governing the three-tier system were not filed with the Department of State until June 13, 1983 when they were evidently adopted as a permanent measure.
The petitioners contend that the three-tier system could only be promulgated by filing the new regulations with the Department of State. Primary reliance is placed upon section 8 of article IV of the Constitution of the State of New York which provides that: “No rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state” (emphasis added). The Legislature has implemented this provision by enacting section 102 of the Executive Law yrhich mandates that certified copies of such rules and regulations be transmitted to the Secretary of State. The petitioners conclude that the three-tier system was void prior to the respondents’ compliance with these legal provisions (see People v Cull, 10 NY2d 123).
The respondents argue that the disciplinary procedures in question are related to the “internal management” of the prison. It is their position that such administrative rules are exempt from the filing requirements set forth in the Constitution and the Executive Law. They ask this court to conclude that the Commissioner of Correctional Services had the authority to implement these procedural changes pursuant to section 112 of the Correction Law and his own regulations (see 7 NYCRR 3.1).
This court believes that the position of the respondents may not be sustained due to the impact of Wolff (supra). In that case, the Supreme Court reviewed the validity of procedures used to discipline inmates. Prison officials contended that such measures involve “a matter of policy *447 raising no constitutional issue” (p 555). The Supreme Court, however, disagreed and held that such disciplinary measures affect “liberty” interests protected by the Fourteenth Amendment (p 556). The court concluded that the State-created'right to good time credit could not be “arbitrarily abrogated” (p 557) and set forth certain minimum procedures which should be followed in imposing such sanctions. The regulations set forth in 7 NYCRR part 253 were designed to protect such “liberty” interests and to implement the requirements of Wolff (supra). Therefore, the attempt to supersede these requirements with the enactment of the three-tier system may not be said to solely affect the “internal management” of a prison.
The Assistant Attorney-General has urged that the three-tier procedure is exempt from the mandates of section 8 of article IV of the Constitution and section 102 of the Executive Law because those provisions only dictate the filing of rules “which govern the conduct of and impose burdens upon the general public” (Ornstein v Regan, 604 F2d 212, 213; People v Fogerty, 18 NY2d 664; Matter of Schuyler v State Univ., 31 AD2d 273). Counsel argues that inmates may not be considered members of the “general public” in interpreting the filing requirement.
This court believes that the term “general public” need not be interpreted in so strict a fashion in the instant context. The Department of Correctional Services is the administrative agency which exercises the power of the State over a narrow segment of the “general public”: those who have been committed to its custody pursuant to criminal convictions. The cited provisions of the Executive Law and the Constitution place a restriction upon the exercise of the State’s administrative rule-making power over people subjected to an agency’s control. For most agencies, this protected class consists of the “general public”. In the instant context, the protected class of people consists of prison inmates. To remove inmates from the protected class of persons would defeat the constitutional restraint upon the exercise of administrative power.
Application of the filing requirement to this case would effectuate its purpose. The three-tier system would “burden” inmates by establishing the method whereby they *448 could be subjected to sanctions which affect their constitutionally protected interests. In enacting such rules, the respondents act in a quasi-legislative capacity and establish procedural law. In Cull (10 NY2d 123,126, supra), the New York Court of Appeals held that the constitutional filing requirement “embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future”. The court also noted (p 128) that the provision was designed to provide notice and a “ ‘common’ and ‘definite place’ * * * where the exact content of such rules and regulations, including any changes, might be found”. Inmates faced with disciplinary action should have such a source available to them.
This court believes that the exception for rules involving “internal management” is more appropriately applicable to guidelines designed for employees or for matters affecting members of an agency. Thus in People v Fogerty (18 NY2d 664, supra), the court held that the filing requirement did not apply to State Police rules for administering blood tests, evidently because the rules related to the conduct of troopers (see dissenting opn of Justice Van Voorhis, at pp 666-667). In Ornstein v Regan (604 F2d 212, supra), the United States Court of Appeals for the Second Circuit refused to apply the requirement to a regulation which managed the retirement program for an agency’s employees.
In Schuyler v State Univ. (31 AD2d 273, supra), the Third Department held that rules relating to student behavior need not be filed by the State University because they only affected students and not the general public. Those rules most likely did not serve to implement procedural law established in a United States Supreme Court decision. Nor can it be said that inmates have voluntarily associated themselves into a community as have students as members of a university.
Other courts have indicated that the Department of Correctional Services is subject to the filing requirement (see Matter of Bugliaro v Wilmot, 108 Misc 2d 425). The Third Department has indicated that a directive authorizing the suspension of visitation rights for cause would be ineffective if intended to apply to an individual inmate *449 since it does not have the effect of a filed regulation (see Matter of Chambers v Coughlin, 76 AD2d 980, 981; but cf. Matter of Johnson v Smith, 83 AD2d 721). This court believes that the constitutional rights of inmates are so intertwined with the disciplinary procedures as to mandate filing of these regulations with the Secretary of State (see Whiting v Marine Midland Bank-Western, 80 Misc 2d 871, 879).
The commissioner’s duty to transmit new regulations to the Department of State was not nullified by the existence of 7 NYCRR 3.1. This section provides that “In his discretion the commissioner may direct, orally or in writing, that any rule or regulation of the department be stayed, suspended, rescinded, modified or otherwise amended temporarily or indefinitely. If the direction is oral, it shall be reduced to writing as soon as practicable and if the direction constitutes an indefinite amendment it shall be filed with the Secretary of State.” The commissioner could not use his own regulations as an excuse to avoid compliance with the constitutional and statutory requirements from February 1, 1983 until June 13, 1983.
It remains to be determined whether or not the three-tier system as utilized actually violated applicable rights under the regulations still in effect or under Wolff v McDonnell (418 US 539, supra).
The three-tier system omitted the following key provisions from 7 NYCRR part 253: the requirement that “The person conducting the proceeding shall interview one or more employees who witnessed or have direct knowledge of the incident” (7 NYCRR 253.4 [c]); the requirement that after the taking of such proof, the hearing officer “shall then once again interview the inmate and shall advise him of the factual circumstances that appear to support the charge and shall afford him an opportunity to comment thereon and to make any statement he may care to submit with respect to the charge” (7 NYCRR 253.4 [e]); and the requirement that the hearing officer be satisfied that “the record of the proceeding contains substantial evidence in support of the charge” (7 NYCRR 253.4 [g]).
As an example of how these procedural changes were applied, a disciplinary record from a companion case was *450 admitted into evidence. Anthony Curcio was charged with the following rule violations in a misbehavior report filed by Correction Officer Daniels on February 7, 1983: possession of a dangerous weapon, attempting to inflict bodily harm, fighting, and possessing contraband. This document, adequately drafted to serve as an accusatory instrument, was read to Mr. Curcio at his initial appearance in the superintendent’s proceeding. He denied the charges and requested that two inmate witnesses be interviewed. Both of these witnesses denied that Curcio had been involved in a fight.
Their testimony did not incriminate Curcio on any charge. Upon his second appearance before the hearing officer, Curcio listened to the testimony of his supporting witnesses and was given an opportunity to add to it. The hearing officer then informed the inmate that he was affirming the charges upon the written report of Officer Daniels.
On this record it appears that the inmate was deprived of procedural rights guaranteed by the regulations cited above. Indeed, it appears that no “evidentiary” hearing actually took place. This court believes that the failure to admit more probative “evidence” into the hearing violated the applicable regulations and the requirements of due process of law.
In Wolff v McDonnell (supra, p 557) the Supreme Court held that some type of “hearing” be held before the applicable liberty interests could be affected and that the inmates were entitled to protection from arbitrary action. Therefore, the court concluded (p 558) that the determination of whether serious conduct has occurred “becomes critical”.
The court went on to specify (p 559) certain minimum procedural rights including prior written notice of the charges and a “ ‘written statement by the factfinders as to the evidence relied on and reasons’ [for the disciplinary action]” (citing Morrissey v Brewer, 408 US 471). The Supreme Court proceeded to limit the accused inmate’s right to confront and cross-examine witnesses against him. This court believes that the holding implies that it is up to prison officials to prove “wrongful conduct” and that the Supreme Court contemplated that the hearing would pro *451 duce more incriminating evidence than that contained in the original accusatory instrument.
Requiring the department to produce evidence rather than to rely on an unsworn written report is also justified under the Supreme Court’s traditional analysis of what procedures are mandatory under due process (see Dixon v Love, 431 US 105). The factors to be considered include: the private interest to be affected by the State action; the risk of error in the procedures used and the probable value of additional safeguards; and the Government’s interest in the matter including the burden of additional requirements (pp 112-113). In a case like Mr. Curcio’s the burden could have been met by an interview with the officer who wrote the report.
Due to the conflicting versions given of the incident, such an interview would greatly aid the hearing officer in resolving the credibility of the various witnesses. He could ask detailed questions, compare answers and observe the demeanor of the witnesses. The burden involved in calling an employee as a witness would be minimal and has been recognized as a practical requirement by the department in its own regulations (see 7 NYCRR 253.4 [c]). In a given case some other form of evidence might satisfy due process standards.
Finally, this court believes that under New York law it is incumbent upon an administrative agency to justify such a decision by some probative evidence. At one time it was clear that such determinations must be supported by a residuum of legal evidence (see Matter of Carroll v Knickerbocker Ice Co., 218 NY 435). The validity of this rule has fallen into question (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [July 13, 1978]; but cf. People ex rel. Wallace v State of New York, 70 AD2d 781 [May, 1979]).
This court still believes that administrative adjudication involving rights protected by due process must be supported by substantial evidence, and that an unsworn hearsay document does not satisfy that requirement of proof as defined under New York law (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra, p 180).
*452 In summary, this court holds that to be effective, the three-tier system should have been filed with the Secretary of State but was not. In these cases, the prior regulations were not followed. It further suggests that even if they had been duly filed, the regulations are constitutionally deficient because the factual determination is made without taking any proof other than the accusatory instrument from the people claiming an infraction.
It is ordered that the superintendent’s proceedings held against Tyrone Jones pursuant to the three-tier system on March 8,1983 and April 5,1983 be expunged from institutional records.