**James WILLIAMS, Plaintiff-Appellant,**

v.

**Harold J. SMITH, Superintendent, and W. Morgan, C.O., Attica Correctional Facility, Defendants-Appellees.**

**No. 382, Docket 85–2158.**

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1985.

Decided Jan. 15, 1986.

Barbara A. McCormick, New York City (Frederick T. Davis, Gregory L. Diskant, Patterson, Belknap, Webb & Tyler, New York City, of counsel), for plaintiff-appellant.

Colvin Grannum, Albany, N.Y. (Robert Abrams, Atty. Gen., Robert Hermann, Sol. Gen., William J. Kogan, Asst. Sol. Gen., Linda J. Cohen, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Before MANSFIELD, MESKILL and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

James Williams, an inmate of the New York State Correctional Facility at Attica ("Attica"), appeals an order of the Western District of New York, John T. Curtin *Chief Judge*, granting summary judgment dismissing his action under 42 U.S.C. § 1983 (1982) against defendants Harold J. Smith, Superintendent of Attica, and W. Morgan, Correctional Officer. The complaint alleged that the defendants had violated Williams' constitutional rights in the conduct of a prison disciplinary hearing. The district court found that Williams had failed to raise an issue of material fact regarding the personal involvement of Morgan and Smith in the alleged violation of his rights. We affirm as to Morgan and reverse as to Smith.

The disciplinary proceeding arose out of the alleged failure of Williams to stand in his cell as ordered during a count of prisoners. The guards at Attica count the prisoners twice daily. Since 1980, the inmates have been required to stand by their bunks and turn on their cell lights while being counted. Prisoners Legal Services of New York, *Attica: A Report on Conditions* 24 (1983), (reproduced at *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1044 (2d Cir.1985) (Appendix A)). On September 22, 1983 defendant Morgan filed an Inmate Misbehavior Report accusing plaintiff Williams of failing to stand during the count, despite being ordered to do so.

Under Attica's three tiered disciplinary procedure, a hearing on Morgan's complaint was held on September 27, 1983. Prior to the hearing Corrections Counselor G. Calderon interviewed Williams. Calderon noted, on an official "Witness Request Form," that Williams requested that In-

mate Johnson, President of the Lifers' Program, be called as a witness at the hearing.

Johnson, however, was not called at the hearing. Instead, Lieutenant Komanecky, the Hearing Officer, read aloud to Williams the report of Morgan, who was not present, and listened while Williams denied the charges. Komanecky found Williams guilty and sentenced him to 30 days "keep lock". During keep lock a prisoner is "confined to his own cell and is deprived of almost all contact with the rest of the prison population and participation in the normal routine of the institution ..." *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). The entire hearing, including the time it took Komanecky to consider his verdict, lasted eight minutes.

Officer Morgan did not testify at the hearing.

Following the hearing, Williams sought a writ of habeas corpus pursuant to N.Y.Civ. Prac.Law & Rules, Art. 70, in New York Supreme Court, Wyoming County. In January, 1984, the Court entered a Partial Order of Stipulation and Judgment providing that, though Williams had already served the 30-day sentence, he was not to serve any further time in keep lock as a result of the September 27 sentence, that any good time he had lost as a result of the hearing should be restored and that the verdict should be expunged from his record. In the present suit the defendants concede that the government consented to the stipulation because the prison had failed to call the witness Williams requested.

Seven months after the decision of the New York Supreme Court, Williams, acting pro se, filed the present suit in the Western District of New York. Williams' handwritten complaint alleged that defendants Morgan and Smith had violated 42 U.S.C. § 1983. He stated:

"On 9–22–83 Officer Morgan wrote me up for not standing for the count, but I did stand. For this I received 30 days, I filed an appeal, but the Superintendant [sic] affirmed the charges. Following this I went to Supreme Court and the charges were proved to be an error, and therefore illegal."

Williams requested "$5,000 for the 30 days I was held in my cell illegally as well as $2,000 for cruel and unusual punishment."

The defendants filed an answer on January 7, 1985, with supporting affidavits by Superintendent Smith and Paul F. McCarthy, Assistant Attorney General of the State of New York and counsel to the defendants, and moved for summary judgment. In the answer they denied "knowledge or information sufficient to form a belief as to the allegation that the Superintendent affirmed the charges," and advanced several affirmative defenses. The sixth defense stated "That the Defendant Harold J. Smith did not personally participate in any of the events described in the complaint". The seventh claimed that "[d]efendant Morgan's participation in the events described in the Complaint was limited to preparing and submitting an Inmate Misbehavior Report", and the eighth alleged that the defendants did not act in bad faith.

Smith's affidavit supporting the answer made no specific factual allegations. It broadly claimed, however, that Smith "did not personally participate in any of the events described in the Complaint." In his affidavit McCarthy's only comment on the defendants' involvement in the disciplinary hearing was the broad allegation "that defendants did not act in bad faith, were not intentionally, recklessly or wantonly indifferent, grossly negligent, nor did they personally know, acquiesce or participate in any deprivation of the plaintiff's constitutional rights."

Williams submitted a handwritten response to defendants' motion for summary judgment. On April 25, 1984, however, the district court granted their motion, finding that:

"Plaintiff's response does not adequately address the facts brought out in defendants' affidavits in support of the motion for summary judgment. I also find that

defendants did not act in bad faith, were not intentionally, recklessly or wantonly indifferent, grossly negligent, nor did they personally know, acquiesce or participate in any deprivation of plaintiff's constitutional rights."

## DISCUSSION

### I. *Qualified Immunity*

In actions under 42 U.S.C. § 1983, good faith or qualified immunity is an affirmative defense which must be pleaded by the defendant officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Sec. & Law Enforcement Emp. Dist. C. 82 v. Carey*, 737 F.2d 187, 210 (2d Cir.1984). Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra*, 457 U.S. at 818, 102 S.Ct. at 2738. *See also Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984).

Because Williams was a pro se litigant, his complaint must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Patrick v. Le Fevre*, 745 F.2d 153, 160 (2d Cir.1984). He contends that it sufficiently alleged violation of his constitutional rights in two respects. First he argues that it should be read to allege that defendants violated his due process right not to be convicted in a disciplinary hearing based only on the unsworn, written report of a prison official. Though Williams' 30-day incarceration in keep lock triggered due process protections, *McCann v. Coughlin*, 698 F.2d 112, 121 (2d Cir.1983); *McKinnon, supra*, 568 F.2d at 936–39, we cannot say that it was clearly established in 1983 that those protections barred conviction in a prison disciplinary hearing based only on a guard's unsworn, written report. Such a conviction need only be supported by "some" or "a modicum" of evidence.

*Superintendent, Mass. Corr. Inst. Walpole v. Hill*, —— U.S. ——, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). It is unclear whether a written, unsworn report satisfies that requirement.

Williams argues, however, that *Jones v. Smith*, 120 Misc.2d 445, 466 N.Y.S.2d 175 (Sup.Ct.1983), *aff'd mem.*, 101 A.D.2d 705, 475 N.Y.S.2d 809 (4th Dept.1984), *aff'd on other grounds*, 64 N.Y.2d 1003, 489 N.Y.S.2d 50, 478 N.E.2d 191 (1985), clearly established that his conviction had to be supported by more than Morgan's report. Even assuming *arguendo* that a single decision of a state's trial court can "clearly establish" federal constitutional rights, we disagree. The decision was rendered August 3, 1983, made available in legal reporters only some time later, and eventually affirmed, on other grounds, in 1985. The hearing at issue in this case occurred on September 27, 1983, less than two months after the decision was rendered by the Wyoming County Supreme Court and while the appeal was pending. We cannot say that a reasonable prison official should on that date have known of *Jones* or the law it promulgated.

Plaintiff also claims, however, that his complaint alleged that the defendants violated his due process right "to call witnesses and present evidence in his defense, 'when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals.'" *McCann, supra*, 698 F.2d at 122 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)). *See also Ponte v. Real*, —— U.S. ——, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The prisoner's right to call witnesses was initially recognized in 1974, *Wolff, supra*, 413 U.S. at 556, 94 S.Ct. at 2974, and was clearly established in 1979, *McCann, supra*, 698 F.2d at 124–25. Williams' complaint, liberally construed, alleged that defendants impaired that right. Williams noted in his complaint that the New York Supreme Court had found his imprisonment in keep lock to have been illegal and sought damages for that "il-

legal" incarceration. Defendants concede that the Supreme Court's decision rested on the fact the Hearing Officer failed to call Williams' witness. It may reasonably be inferred that Williams claimed that the incarceration was illegal for the same reasons relied on by the New York Supreme Court. The district court's conclusion that the defendants were sheltered from suit by qualified immunity was therefore erroneous.

## II. *Personal Involvement*

■ The district court's dismissal of Williams' complaint also rested on its conclusion that Williams had failed adequately to address defendants' claim that they did not "personally know, acquiesce or participate in any deprivation of plaintiff's constitutional rights." Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon, supra,* 568 F.2d at 934.

Since personal involvement is a question of fact we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendants is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hayden Pub. Co., Inc. v. Cox Broadcasting Corp.,* 730 F.2d 64, 67 (2d Cir.1984). The party seeking summary judgment bears the burden of establishing that no such dispute exists. *Gutwein v. Roche Laboratories,* 739 F.2d 93, 95 (2d Cir.1984). All ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought. *Patrick v. Le Fevre,* 745 F.2d 153, 158 (2d Cir.1984). When, however, a party moves for summary judgment, and documents his motion, setting forth specific facts denying the claims, the opposing party must, "set forth specific facts showing that there is a genuine issue

for trial." Fed.R.Civ.P. 56(e). *See also S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Mere conclusory allegations or denials will not suffice, *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983). However, if "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Patrick, supra,* 745 F.2d at 160 (quoting Advisory Committee Notes to Fed.R.Civ.P. 56(e) (1963 Amend.)).

Construing plaintiff's pro se complaint liberally, as we must, we conclude that he has raised an issue of material fact regarding Smith's, but not Morgan's, personal involvement in allegedly depriving him of his right to call witnesses at his disciplinary hearing.

■ A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction, *see, e.g., Johnson v. Glick,* 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis,* 442 F.2d 178, 205 (2d Cir.1971) (en banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) (Prison warden liable for ordering that inmate be placed in solitary confinement). A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, *see, e.g., United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, *see, e.g., McCann, supra,* 698 F.2d at 125; *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577 66 L.Ed.2d 475 (1980); *Duchesne v. Sugarman,* 566 F.2d 817, 830–31 (2d Cir.1977). Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused

the unlawful condition or event, *see, e.g., Wright v. McMann,* 460 F.2d 126, 135 (2d Cir.1972) (warden responsible for condition of disciplinary units at prison). *Cf. Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979) (municipality liable for gross negligence in training its prison guards).

 Officer Morgan's involvement in this case does not fall within any of these categories. He claims that his "participation in the events described in the complaint was limited to preparing and submitting an Inmate Misbehavior Report." The transcript of the hearing, the Hearing Record Sheet and the Hearing Disposition Sheet bear him out. Lieutenant Komanecky adjudicated the complaint. Morgan was not present and did not testify. Morgan has, accordingly, documented his assertion of no personal involvement. Williams offers no concrete evidence to the contrary. Indeed, he does not allege Morgan aided in the hearing but claims, "[i]f Morgan filed a false misbehavior report which initiated the procedurally flawed disciplinary hearing, he should be liable for the Due Process violations [occurring at the hearing]." The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing. *Sommer v. Dixon,* 709 F.2d 173, 174–75 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

 Williams has, however, sufficiently alleged that Superintendent Smith was personally involved in depriving him of his due process right to call witnesses. Williams expressly claimed that Smith affirmed his conviction on administrative appeal. Smith's broad allegation that he did not "personally participate" in "any of the events described in the Complaint" is not a documented allegation of fact which Williams needs to rebut in order to survive a motion for summary judgment. *Patrick, supra,* 745 F.2d at 160. Indeed, even if Smith did not actively affirm the conviction on administrative appeal, we cannot say, on

this record, that as Superintendent of Attica he was not directly responsible for the conduct of prison disciplinary hearings, or that, given the frequency with which Attica has violated inmates' rights to call witnesses during Smith's tenure, *People ex rel. McBayne v. Smith,* 122 Misc.2d 199, 469 N.Y.S.2d 893, 894 (Sup.Ct.1983); *People ex rel. Martin v. Smith,* 117 Misc.2d 66, 457 N.Y.S.2d 390, 391–92 (1982); *People ex rel. Cooper v. Smith,* 115 Misc.2d 689, 454 N.Y. S.2d 635, 636–37 (1982), Smith did not accept a custom or policy at Attica allowing that unconstitutional practice to occur. We, of course, do not conclude that Smith was personally involved in a deprivation of due process, only that, on this record, Williams is entitled to prove that he was.

The district court, accordingly, properly dismissed plaintiff's action against Morgan, but its dismissal of the action against Smith was improper. We therefore reverse the latter decision and remand for further proceedings.