**Roberta Boxer LEVI, Plaintiff,**

v.

**Herman FINESOD, Jackie Fine Arts, Inc., Art Masters International Ltd., Second Edition Fine Arts, and Diversified Investors Services of North America, Defendant.**

**92 Civ. 9361 (KTD).**

United States District Court, S.D. New York.

Feb. 22, 1995.

Order Withdrawing Discovery · Sanctions Discussion Feb. 28, 1995.

Cutner & Associates, P.C., New York City (David A. Cutner, Debra I. Harris, of counsel), for plaintiff.

Bressler & Bressler, New York City (Martin Bressler, of counsel), for defendants Jackie Fine Arts, Inc., Art Masters Intern. Ltd., Second Edition Fine Arts, and Diversified Investors Services of North America.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Roberta Boxer Levi initiated the present diversity action on December 28, 1992. On April 1, 1993, Defendants Herman Finesod, Jackie Fine Arts, Inc. ("Jackie"), Art Masters International ("AMI"), and Second Edition Fine Arts ("Second Edition") moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. By a memorandum and order dated December 17, 1993, I denied that motion in its entirety. Plaintiff now moves for summary judgment on the issue of liability in favor of Plaintiff and against Defendants.[1] By a separate notice of motion, Plaintiff also moves for an order pursuant to Rule 37(b) of the Federal Rules of Civil Procedure precluding Defendants from offering any evidence or making any defenses or counterclaims against Plaintiff; granting summary judgment against Defendants on the issue of damages, and that it be taken as established that Plaintiff's damages amount to $18,531,-400. Plaintiff additionally requests that Defendants be held in contempt of court, and also be required to pay Plaintiff's attorney's fees and costs.

For the following reasons, Plaintiff's motion on the issue of liability is granted, while the issue of damages will be referred to Magistrate Judge Buchwald for an inquest. Questions of attorney's fees and costs will abide the determination of the inquest. The remaining motions are denied.

---

1. Diversified Investors Services of North America ("Diversified") did not join with the other Defendants in their summary judgment motion.

Plaintiff's present summary judgment motion names all Defendants, including Diversified.

## I.

The facts of this case have been set forth at length in my December 17, 1993 memorandum and order denying Defendants' motion for summary judgment. *See Levi v. Finesod,* 1993 WL 535191, at *1 (S.D.N.Y. December 17, 1993). As those same facts form the basis of the present motions, they are restated in part below.

Marina Picasso is the granddaughter and one of the heirs of the reknowned artist Pablo Picasso. In the late 1970's, Plaintiff introduced some of the Defendants to Marina's art dealer, who introduced them to Marina's attorney, who in turn introduced them to Marina Picasso herself.

Paraselenes S.A. is a company in which Marina Picasso maintains an ownership interest. On December 6, 1979, Paraselenes S.A. entered into an agreement with AMI (the "Initial Agreement") which granted to AMI the rights to reproduction masters of certain Picasso works. Pablo Picasso's other heirs did not consent to the Initial Agreement, and commenced lawsuits in the United States and France challenging its validity. On October 26, 1980, the heirs agreed to the acquisition of the reproduction masters by AMI, pursuant to a settlement agreement (the "Settlement Agreement").

On May 20, 1981, Finesod and Jackie entered into an agreement to pay Levi for her services, effective as of January 1, 1979 (the "Agreement"). The Agreement specifically acknowledges that the reproduction masters were acquired as a result of Levi's services. The Agreement also requires Levi to pay 8% of the legal fees incurred in defending the lawsuits brought by the other heirs over the Initial Agreement. The amount Levi owed for these legal fees could be deducted from Levi's commissions under the Agreement.

In addition to these findings, I also expressly recognized that, in further opposition to Defendants' motion, Levi "provided much evidence tending to show that the terms of the contractual arrangements establish that her obligation was to introduce the Moving Defendants to Marina Picasso's representatives. Indeed, Levi has put forth so much evidence on this issue that it appears that the wrong party has moved for summary judg-ment." *Finesod,* 1993 WL 535191, at *3 (S.D.N.Y. December 17, 1993). I assessed the evidence set forth by Levi as follows:

First, § 1.01 of the Agreement provides that the Moving Defendants "have heretofore and/or may hereafter acquire ownership and/or options to acquire the reproduction or other rights in and to Masters owned by the Picasso Estate" as a result Levi's introduction of the Moving Defendants to the estate of Pablo Picasso and to Marina Picasso's representatives.

Second, through § 2.01 of the Agreement, the Moving Defendants again acknowledge that they have acquired and may acquire the rights to the reproduction masters as a result of Levi's services. Specifically, § 2.01 provides:

> Finesod, Jackie, and AMI agree that any and all Picasso Masters heretofore and hereafter acquired by Finesod, Jackie, AMI or any other Entity during the term hereof will have been acquired as a result of the services of [Levi].

Finally, § 3.08 required Levi to pay for part of the legal fees incurred in defending the lawsuits brought by the other Picasso heirs. In fact, the Moving Defendants were permitted to deduct Levi's share of the legal fees from her commissions. These provisions indicate that the Moving Defendants believed that Levi had performed her obligation, which was to introduce them to the representatives of Marina Picasso. Moreover, these provisions also indicate that the Moving Defendants intended to pay her for her services.

Most importantly, the Moving Defendants agreed to these provisions in the Agreement after the lawsuits initiated by the Picasso heirs were already settled. Thus, these provisions were entered into at a time when all the facts of the alleged non-performance were known to the Moving Defendants. Such a chronology shows that when the Moving Defendants entered into the Agreement they did not then believe that Levi had failed to meet her contractual obligations. Thus, this chronology indicates that Levi's role was to

introduce them to the representatives of Marina Picasso and not every Picasso heir.

In addition, Levi also points out that for twelve years, the Moving Defendants performed their obligations and paid Levi approximately $267,000 in commissions. By paying her these commissions, the Moving Defendants, at least tacitly, conceded that Levi satisfied her contractual obligation, i.e. to introduce them to Marina Picasso's representatives.

*Finesod*, 1993 WL 535191, at *3–4 (S.D.N.Y. December 17, 1993).

## II.

### DISCUSSION

Summary judgment is appropriate only where the moving party demonstrates that there exists no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence must be construed and all inferences drawn in favor of the non-moving party. *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Williams v. Smith*, 781 F.2d at 323. A non-moving party can defeat a properly asserted summary judgment motion by demonstrating the existence of a material issue of fact necessitating a trial on the merits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Williams*, 781 F.2d at 323. To sustain this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Williams*, 781 F.2d at 323 ("Mere conclusory allegations or denials will not suffice.") In turn, the moving party may discharge its burden by "pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Even where evidence is offered, summary judgment may still be granted if that evidence is not significantly probative. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In the end, however, the inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

On the present issue of liability, the relevant focus is whether Levi was obligated to introduce the Moving Defendants to representatives of Marina Picasso or all the Picasso heirs. Based on the terms of the Agreement, the chronology of events, and the fact that the Moving Defendants paid Levi commissions for twelve years, I am convinced that the extent of Levi's obligation was to introduce Defendants to Marina's representatives. Having introduced Defendants to Marina's art dealer and to her attorney, Levi has fulfilled her obligations under the Agreement. Thus, no issue of material fact remains pertaining to Levi's satisfaction of her obligation under the Agreement and Defendants' resultant liability thereunder.

Only two Defendants, Finesod and Diversified (the "Responding Defendants"), have responded to the present summary judgment motions. These Defendants have offered a three-paragraph counterstatement pursuant to local rule 3(g), with an affidavit by Finesod attached. The Responding Defendants' counterstatement fails to establish the existence of a material issue of fact necessitating a trial on the merits, *see Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, with regard to their liability under the Agreement. The only factual issues remaining pertain to damages and attorney's fees and costs.

The first two paragraphs of the counterstatement pertain to the issue of liability. Paragraph one claims that Finesod is not a signatory to the Agreement and therefore is not liable thereunder. However, in my 1993

memorandum and order, I expressly found that Finesod entered into the Agreement with Levi. *Finesod,* 1993 WL 535191, at *1 (S.D.N.Y. December 17, 1991).

■ In paragraph two, the Responding Defendants argue that Plaintiff did not pursue her claim until more than ten years had elapsed since the sale of rights for which she now claims compensation is due. Levi did not discover Defendants' false statements and representations until 1992. Levi's cause of action is therefore timely under the New York statute of limitations for fraud, having been commenced within two years of the date of discovery of the fraud. *Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 350 (2d Cir.1993) (stating in securities case that a plaintiff "will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud" (citations omitted)); *Rodgers v. Roulette Records, Inc.,* 677 F.Supp. 731, 737 (S.D.N.Y.1988) (statute begins to run when plaintiff has information sufficient to lead person of ordinary intelligence to suspect fraud). There having been no undue delay, there is no basis for the Responding Defendants' claim that Levi might have tacitly admitted that no money is due her.

■ Finally, in paragraph three, the Responding Defendants claim that they have fully performed their obligations under the Agreement. This allegation pertains to the issue of damages, but not to the issue of Defendants' liability under the Agreement. In the present case, Defendants could be found liable under the Agreement, yet could also be found to have satisfied their obligations to Plaintiff under that Agreement.

Rule 56(c) of the Federal Rules of Civil Procedure expressly provides for summary judgment even where there exists a genuine issue as to the amount of damages. Under such circumstances, a partial summary judgment order may be entered "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy ..." Fed.R.Civ.P. 56(d); *Leas-*

*ing Service Corp. v. Graham,* 646 F.Supp. 1410, 1414 (S.D.N.Y.1986).

Accordingly, summary judgment in favor of Plaintiff will be granted on the issue of liability. The issue of damages is referred to Magistrate Judge Buchwald for an inquest.

## III.

### CONCLUSION

Plaintiff's motion for summary judgment on the issue of Defendants' liability is hereby granted. Plaintiff's motion for summary judgment on the issue of damages is hereby denied, the matter to be referred to Magistrate Judge Buchwald for an inquest. Plaintiff's request for attorney's fees and costs is to abide the determination of the inquest. The request to hold Defendants in contempt of court is denied. The request to preclude Defendants from offering any evidence or making any defenses or counterclaims against Plaintiff is denied as to the issue of damages, and denied as moot on the issue of liability.

SO ORDERED.

### ORDER

At the time I filed my February 22, 1995 memorandum and order herein, I was unaware that Chief Magistrate Judge Buchwald was actively engaged in the case. For that reason, I withdraw that part of my memorandum and order dealing with Plaintiff's motions for sanctions related to issues of discovery. Any question of sanctions will abide the determination by Chief Magistrate Judge Buchwald.

SO ORDERED.