**Saufuddin ABDUS–SAMAD, formerly known as Lance L. Grays, Plaintiff,**

v.

**Mr. GREINER, Superintendent, Sing–Sing C.F.; K.A. Greiner, R.N., N.A., Sing–Sing C.F.; Dr. Halko, M.D., Sing–Sing C.F.; Dr. Maw, M.D., Sing–Sing C.F.; Ms. Figueroa, R.N., Sing–Sing C.F.; R. Colon, I.R.G.C. Supervisor, Sing–Sing C.F.; Michael McGinnis, Superintendent, Southport C.F.; Mr. Obrowiski, N.A., Southport C.F.; Ms. Von Hagen, R.N., Southport C.F., Defendants.**

No. 00Civ.3885(LTS)(THK).

United States District Court, S.D. New York.

Aug. 13, 2001.

Mr. Saufuddin Abdus–Samad, Auburn, NY, pro se.

Elliot Spitzer, Attorney General of the State of New York, by Stacy Robin Sabbatini, Assistant Attorney General, New York City, for defendants.

### OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Saufuddin Abdus–Samad ("Plaintiff" or "Abdus–Samad") brings this action against defendants Mr. Greiner, Superintendent, Sing–Sing Correctional Fa-

cility; K.A. Greiner, R.N.; Dr. Halko; Dr. Maw; Ms. Figueroa, R.N.; R. Colon, I.R.G.C. Supervisor, Sing–Sing Correctional Facility; Michael McGinnis, Superintendent, Southport Correctional Facility; Mr. Obrowiski, N.A., Southport Correctional Facility and Ms. Von Hagen, R.N., Southport Correctional Facility (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff alleges that Defendants violated his federal civil rights under the Eighth Amendment by failing to provide him with adequate medical care. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Before the Court is the motion of Defendants, brought pursuant to Fed.R.Civ.P. 12(b)(1) and (6), to dismiss the complaint.[1] For the reasons set forth below, Defendants' motion to dismiss the Complaint is denied as against Superintendent Greiner, K.A. Greiner, Dr. Halko, Dr. Maw, Ms. Figueroa, and Mr. Colon, and is granted as to Defendants Williams, Von Hagen, Mr. Obrowiski and Michael McGinnis.

## BACKGROUND

The facts as set forth below are taken from Plaintiff's complaint. On May 3, 1997, Plaintiff, an inmate of Sing Sing Correctional Facility, was injured during a basketball game. Complaint, ¶ 13. Plaintiff was examined by a nurse in the prison emergency room where he was given temporary medical pass for a cane, showers, a medical keeplock and allowed in-cell meals. *Id.*, ¶ 15. Plaintiff was also given an appointment to see staff physicians. *Id.*, ¶ 16. On May 5, 1997, Plaintiff was examined by Defendant Dr. Halko, who diagnosed Plaintiff as suffering from a bruised tendon. *Id.*, ¶¶ 17–18. After continued complaints, he was examined by Defendant

Dr. Maw on May 12, 1997. *Id.*, ¶ 19. Plaintiff complained to Dr. Maw that he experienced chronic and substantial pain and swelling, but Dr. Maw did not refer Plaintiff to a specialist and did not renew Plaintiff's medical pass. *Id.*, ¶ 20. Dr. Maw insisted that Plaintiff was well enough to return to his work assignment. *Id.* Plaintiff then filed a grievance on May 13, 1997, claiming that he had not received adequate medical care. *Id.*, ¶ 21. In addition, Plaintiff wrote a letter to Defendant Superintendent Greiner, complaining that he had not received adequate medical care for his injury. *Id.*, ¶ 22.

Defendant Mr. Colon responded to Plaintiff by promising to refer him to Dr. Halko for a new medical pass and that Plaintiff would be given an MRI exam. *Id.*, ¶¶ 23–24. These appointments did not occur. *Id.*, ¶ 25. Defendant Superintendent Greiner responded to Plaintiff's complaint about his medical care by informing Plaintiff that he would be reexamined by Dr. Maw. *Id.*, ¶ 27. This appointment also never occurred. *Id.*, ¶ 28. On July 2, 1997, Plaintiff again injured his ankle when he slipped on a staircase while he was performing his work assignment in the prison cafeteria. *Id.*, ¶ 29. In the emergency room, Defendant Figueroa saw Plaintiff and accused Plaintiff of unlawfully possessing the cane he had been given at the time of the first injury. *Id.*, ¶ 31. Defendant Figueroa did not examine him or review his file, and sent him back to his cell without treatment. *Id.*, ¶¶ 32–33.

On July 8, 1997, Plaintiff's Achilles tendon collapsed while he was walking up a flight of stairs. *Id.*, ¶ 34. Defendants Figueroa and Williams again examined Plaintiff. *Id.*, ¶ 35. Defendant Figueroa as-

---

1. Because Defendants have made no argument elucidating the Rule 12(b)(1) basis of their motion, the Court has determined De-

fendants' motion on the basis of their Rule 12(b)(6) arguments.

serted that Plaintiff was faking his injury. *Id.*, ¶ 36. Defendants Figueroa and Williams then sent Plaintiff for an X-ray, which revealed no abnormalities. *Id.*, ¶ 37.

Subsequently, Plaintiff wrote additional letters to Defendant Nurse Administrator K.A. Greiner, the Inmate Grievance Resolution Committee, the Assistant Commissioner for Medical Services and the Commissioner of the New York State Department of Health, and also filed an appeal to the grievance committee. *Id.*, ¶¶ 38–39. Plaintiff also asked Defendants Figueroa and Williams to place him on a less stringent work assignment. They refused to do so. *Id.*, ¶ 41.

Defendant K.A. Greiner responded to Plaintiff's inquiry by stating that she would await the outcome of the grievance process. *Id.*, ¶¶ 43–44. In October 1997, Plaintiff wrote a second letter to Defendant Superintendent Greiner, complaining that he still had not received adequate medical care and that he had not received a response to the appeal filed in July 1997 from the adverse grievance committee decision. *Id.*, ¶ 45. In November 1997, Defendant Superintendent Greiner informed Plaintiff that the appeal had been denied, stating that the medical department had acted appropriately and that Plaintiff had been abusing the system. *Id.*, ¶¶ 47, 50–51.

In May 1998, Plaintiff, then incarcerated at Green Meadow Correctional Facility, again sought medical treatment for his ankle injury. *Id.*, ¶ 48. Plaintiff was examined by a Dr. Paulano, who noted progressive atrophy and build-up of scar tissue. *Id.*, ¶¶ 50–51. Dr. Paulano referred Plaintiff to a podiatrist, who determined that Plaintiff suffered from progressive atrophy stemming from a ruptured left Achilles tendon suffered in the preceding year. *Id.*, ¶¶ 52–53. The podiatrist prescribed physical therapy. *Id.*, ¶ 53. The physical therapist also noted accumulation of scar tissue. *Id.*, ¶ 54.

While incarcerated at the Green Meadow Correctional Facility, Plaintiff requested his medical records in order to prepare for this lawsuit. *Id.*, ¶ 56. When Plaintiff examined his medical records on September 10, 1999, he discovered that some of the records were missing. *Id.*, ¶¶ 57–58. Defendant Nurse Von Hagen, who was supervising Plaintiff's review of his medical records, informed Plaintiff that she would contact the prisons where Plaintiff previously had been incarcerated and that she would get back to Plaintiff concerning the missing medical records. *Id.*, ¶¶ 57, 59–60. Defendant Von Hagen did not follow up and did not respond to Plaintiff's subsequent inquiries concerning the whereabouts of the missing records. *Id.*, ¶ 61. In September 1999, Plaintiff wrote to Defendant Nurse Administrator Mr. Obrowiski concerning the missing medical records; Mr. Obrowiski also did not respond to Plaintiff's inquiry. *Id.*, ¶ 62. Subsequently, Plaintiff filed a grievance requesting that the medical records be located and wrote Mr. Obrowiski a second time. *Id.*, ¶¶ 63–64. Neither the grievance committee or Mr. Obrowiski responded. *Id.*, ¶¶ 64–65. Subsequently, Plaintiff discovered that his grievance complaint had not been received, so Plaintiff submitted another complaint seeking assistance in locating the missing medical records. *Id.*, ¶¶ 66–67. Plaintiff was instructed to contact the correctional facilities directly to request the missing records. *Id.*, ¶ 68. Plaintiff appealed this decision to Defendant McGinnis, who denied the appeal. *Id.*, ¶ 69.

## DISCUSSION

 A complaint should not be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The factual allegations set forth in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue before the Court " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In addition, allegations of a *pro se* complainant are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on persons convicted of crimes. U.S. Const. amend. VIII. In order to establish an Eighth Amendment claim based upon failure to provide adequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Establishing deliberate indifference includes both a subjective and an objective element. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Chance v.. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).

In respect of the objective element, "[a] serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (quoting *Chance v. Armstrong,* 143 F.3d at 702); *see also Hathaway v. Coughlin,* 37 F.3d at 66 (the objective element contemplates a "condition of urgency" that may result in "degeneration" or "extreme pain.") (citations omitted).

■ The subjective element is satisfied if a plaintiff demonstrates that a defendant acted "with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66 (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The defendant's culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* A plaintiff must allege that an official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970).

■ "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Generally, allegations amounting to at most medical malpractice are insufficient to frame an Eighth Amendment claim. *See Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 181–182 (N.D.N.Y.1996). "In certain instances, [however,] a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." *Chance v. Armstrong,* 143 F.3d at 703. Thus, "mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.,* an act or a failure to act ...

that evinces a conscious disregard of a substantial risk of serious harm." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000), *quoting Chance v. Armstrong*, 143 F.3d at 703 (internal quotation marks omitted).

### Sufficiently Serious Medical Condition

Plaintiff alleges that he first injured his Achilles tendon during a basketball game. Initially, Plaintiff was treated in the prison emergency room, given a medical pass, a cane and an appointment to see Dr. Halko, who decided that Plaintiff had a bruised tendon. Complaint, ¶¶ 15, 17–18. Plaintiff contends that he suffered continuous pain at this time and that he told staff physician Dr. Maw about his continuing pain. *Id.*, ¶ 20. Dr. Maw did not refer Plaintiff to a specialist. *Id.*, ¶ 20. Subsequently, Plaintiff filed a grievance and complained to Defendant Superintendent Greiner about his condition. *Id.*, ¶¶ 20–21. Plaintiff alleges that he reinjured his ankle about two months after the initial injury and then, a week later, his Achilles tendon collapsed. *Id.*, ¶¶ 29, 34. Further, Plaintiff alleges that he filed additional grievance complaints concerning his injury and that he still suffered from "a great amount of pain and swelling in the affected area, as well as discomfort when walking" during July of 1997. *Id.*, ¶ 42. Plaintiff alleges that "[p]ain, swelling and discomfort" were still present in May 1998, when Plaintiff was transferred to Great Meadow Correctional Facility. *Id.*, ¶¶ 48–49. Finally, Plaintiff alleges that the podiatrist at Great Meadow Correctional Facility "diagnosed plaintiff as having progressive atrophy, stemming from a ruptured left Achilles tendon suffered a year past." *Id.*, ¶ 53. A physical therapist "noted a substantial accumulation of scar tissue in light of the long delay in treatment." *Id.*, ¶ 54.

█ Although it is possible that Plaintiff's claim may not withstand a motion for summary judgment, the issue on this motion to dismiss is whether Plaintiff is entitled to prove facts in support of his claim which would entitle him to relief. Taking the above allegations as true, the Court concludes that Plaintiff could prove facts sufficient to meet the objective element of the *Estelle* test. Plaintiff has alleged that he suffered from continuous pain and a degenerative condition and that Defendants were aware of Plaintiff's complaints. Plaintiff is entitled to an opportunity to seek to prove that Defendants' failure to treat Plaintiff could have resulted in further injury or the unnecessary and wanton infliction of pain. *Harrison v. Barkley*, 219 F.3d at 136. At this stage of the litigation the Court cannot determine as a matter law that Plaintiff will be unable to establish that he suffered from serious injury.

### Deliberate Indifference

#### Dr. Halko, Dr. Maw and Nurse Figueroa

█ Establishing deliberate indifference requires that a plaintiff show more than malpractice. *Abdush–Shahid v. Coughlin*, 933 F.Supp. at 181–182. Defendants argue that, because staff physicians treated Plaintiff immediately after each ankle injury, there is no basis for a finding of deliberate indifference. Defendants' Memorandum of Law at 9. It may develop in the course of this case that Defendants will establish that they acted appropriately and that Plaintiff will not be able to show that Defendants Halko, Maw and Figueroa acted in a manner that evinced "a conscious disregard of a substantial risk of serious harm" towards Plaintiff. *Cuoco v. Moritsugu*, 222 F.3d at 107. At this stage of the litigation, there is no evidence before the Court concerning whether Defendants Halko, Maw and Figueroa acted ap-

propriately or inappropriately. In light of Plaintiff's allegations concerning his continued complaints of pain and swelling, the subsequent reinjury of his ankle, his allegations that his injury was ultimately diagnosed as a ruptured Achilles tendon and that he had experienced a build up of scar tissue because of an untreated condition (Complaint, ¶¶ 53–54), the Court cannot determine that Plaintiff can prove no set of facts establishing Defendants Halko, Maw and Figueroa's deliberate indifference. *See Hemmings v. Gorczyk*, 134 F.3d 104, 108–09 (2d Cir.1998) ("While we agree that the fact that [plaintiff] received some medical attention, including two x-rays, substantially weakens his claim of deliberate indifference, we are not prepared to say that his claim is so completely devoid of merit as to justify dismissal at this early stage."); *Gill v. Gilder*, 95 Civ. 7933, 1996 WL 103837 at *5 (S.D.N.Y. Mar.8, 1996) (denying motion to dismiss claim of deliberate indifference where defendants presented no evidence concerning the appropriateness of the treatment given to plaintiff). Accordingly, the motion to dismiss this case against Defendants Halko, Maw and Figueroa is denied.

*Nurse Williams*

■ Plaintiff's allegations concerning Defendant Williams do not sufficiently set forth a claim for deliberate indifference. The allegations in the Complaint merely allege that Defendant Figueroa saw Plaintiff with Defendant Williams after his July 8, 1997 ankle injury (*Id.*, ¶¶ 34–35) and that Defendants Figueroa and Williams sent Plaintiff for an x-ray. *Id.*, ¶ 37. Plaintiff makes generalized assertions in the Complaint that he should have been sent for an MRI instead· of an x-ray (*Id.*, Section IV–A), but the Complaint is devoid of allegations concerning any specific conduct of Defendant Williams that could establish that she acted with deliberate indif-

ference. Accordingly, the Complaint does not state a cause of action under the *Estelle* deliberate indifference test against Defendant Williams.

*Superintendent Greiner, Mr. Colon and K.A. Greiner*

Plaintiff alleges that he filed a grievance and wrote a letter to Mr. Colon requesting adequate medical care for his ankle injury. *Id.*, ¶¶ 21–26. He further alleges that Defendants Superintendent Greiner and Mr. Colon promised Plaintiff that he would be reexamined by staff physicians, but that the examinations never took place. *Id.*, ¶¶ 24–28. Plaintiff alleges that he also wrote Defendant K.A. Greiner, Nurse Administrator, requesting adequate medical care. *Id.*, ¶ 38. He further alleges that Defendant K.A. Greiner indicated that she would await the outcome of Plaintiff's grievance filed July 16, 1997. *Id.*, ¶ 44. Plaintiff alleges that he later was informed by Defendant Superintendent Greiner that his grievance and the appeal to the grievance committee were denied and that medical department had acted appropriately. *Id.*, ¶ 47.

■ The allegations in the Complaint concerning Defendants Superintendent Greiner, Mr. Colon and K.A. Greiner, if taken as true, do not preclude the possibility that Plaintiff could show facts establishing deliberate indifference on the part of these defendants. Whether Defendant Superintendent Greiner, Mr. Colon and K.A. Greiner's alleged actions towards Plaintiff in denying his requests for additional medical attention rose to the level of a failure to act that evinced a conscious disregard of a substantial risk of serious harm cannot be determined as a matter of law at this stage of the litigation. Accordingly, the motion to dismiss the case

against Defendants Superintendent Greiner, Mr. Colon and K.A. Greiner is denied.

*Defendants Obrowiski, Von Hagen and McGinnis*

 Plaintiff's allegations against Defendants Obrowiski, Von Hagen and McGinnis, however, fail to rise to the level of a constitutional violation and, accordingly, are dismissed. In order to recover damages from a state official under section 1983, the official must have personal involvement in the alleged constitutional violation. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).; *Leonhard v. United States*, 633 F.2d 599, 621 n. 30 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). The Complaint alleges that Defendant Von Hagen indicated to Plaintiff that she would email the institutions where Plaintiff had been incarcerated in order to assist him in recovering missing medical records but that she failed to do so. *Id.* ¶¶ 57, 59–61. Plaintiff alleges that he wrote Defendant Obrowiski concerning the missing medical records, but did not receive an adequate response. *Id.* ¶¶ 62–69. Plaintiff alleges merely that Mr. McGinnis affirmed the decision of the grievance committee that he must contact correctional facilities on his own to obtain his medical records.

 Plaintiff's allegations with respect to Defendants Von Hagen, Obrowiski and McGinnis, even seen in the most favorable light, do not frame a cause of action under the Eighth Amendment. Defendants Von Hagen, Obrowiski and McGinnis did not treat Plaintiff and they did not supervise his treatment. The allegations in the Complaint do not set forth facts indicating that their "failure to treat a prisoner's condition … [resulted] in … the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d at 136. The allegations in the Complaint concerning Defendants Von Hagen, Obrowiski and McGinnis could not be supported by facts that, if proved, would demonstrate that those Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. *See, e.g., Hathaway*, 37 F.3d at 66. Accordingly, the Complaint does not state a cause of action under *Estelle*'s deliberate indifference test against Defendants Von Hagen, Obrowiski and McGinnis and will be dismissed as against those Defendants.

*Qualified Immunity*

 Defendants argue for dismissal of the Complaint against Defendants Superintendent Greiner and McGinnis on the ground they are entitled to qualified immunity. The doctrine of qualified immunity protects Government officials from suits against them for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Where a right is clearly established, "the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996).

*Superintendent Greiner*

 It was clearly established by the date of the events alleged in the Complaint that inmates have a constitutional right to be protected from deliberate indifference to medical needs. Thus, Defendant Super-

**316**

intendent Greiner may not rely on the deference given to medical personnel in making medical decisions to immunize his alleged inaction in this case. Moreover, Plaintiff's allegations that Defendant Superintendent Greiner was deliberately indifferent to his medical needs raise sufficient issues of fact concerning Defendant Superintendent Greiner's actions towards Plaintiff to preclude dismissal on qualified immunity grounds at this stage of the litigation. Accordingly, the motion to dismiss the Complaint as against Defendant Superintendent Greiner is denied.

*Mr. McGinnis*

As set forth above, the Complaint is devoid of allegations concerning any specific acts by Mr. McGinnis that amount to a deliberate indifference to Plaintiff's medical needs under *Estelle*. The Complaint will therefore be dismissed as against him. The Court need not reach the issue of Mr. McGinnis' qualified immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint against Defendants Superintendent Greiner, K.A. Greiner, Dr. Halko, Dr. Maw, Ms. Figueroa, and Mr. Colon is denied, and the motion is granted as to Defendants Williams, Von Hagen, Obrowiski and Mr. McGinnis.

A pre-trial conference shall be held in the above-captioned matter on **September 21, 2001 at 2:30 p.m.** in Courtroom No. 444, 40 Foley Square, New York, New York 10007. Defendants' counsel shall arrange for Plaintiff's telephonic participation in the conference. Any application for appointment of counsel shall be served and filed by **August 31, 2001.**

SO ORDERED.