Charles PUGLIESE, Plaintiff,

v.

Mario CUOMO, Governor, State of New York; Thomas A. Coughlin, Commissioner, New York State Department of Corrections; Joseph Costello, Superintendent, Mid–State Correctional Facility; John E. Dadow, M.D.; Doctor Hwong; Victor Herbert, Individually and in his official capacity as Superintendent, Collins Correctional Facility; and Charles Kurtz, M.D., Individually and in his official capacity as a physician and Facility Health Services Director at Collins Correctional Facility, Defendants.

No. 91–CV–1161.

United States District Court, N.D. New York.

Jan. 4, 1996.

Itkowitz & Gottlieb, New York City (Jay B. Itkowitz, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York (Dar-

ren O'Connor, Peter G. Favretto, Asst. Attorneys General, of counsel), for Defendants.

## MEMORANDUM, DECISION & ORDER

HURD, United States Magistrate Judge.

The plaintiff brings this civil rights complaint pursuant to Title 42 U.S.C. § 1983. Plaintiff alleges that defendants interfered with his prescribed medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and his right to due process under the Fifth, Eighth and Fourteenth Amendments. Plaintiff seeks declaratory, compensatory, and punitive damages against the named defendants, individually and collectively, as well as costs and attorney fees. There are three motions currently before the court. First, defendants have moved to dismiss the claims against defendants Gov. Mario Cuomo ("Cuomo") and Commissioner Thomas A. Coughlin ("Coughlin"). Additionally, they have moved for summary judgment in favor of the remaining defendants. Finally, plaintiff has filed a cross-motion for partial summary judgment on the issue of liability only, against defendants Superintendents Joseph Costello ("Costello") and Victor Herbert ("Herbert"); and Drs. John E. Dadow ("Dr. Dadow"), Gilbert A. Hwong ("Hwong"), and Charles Kurtz ("Kurtz").

### FACTS

Although there is a cross-motion, for the purposes of the defendants' motion for summary judgment, the court will view the evidence submitted with a view most favorable to the plaintiff.

On November 2, 1989, some two and one-half months prior to being incarcerated, plaintiff, Charles Pugliese ("Pugliese"), sustained serious injuries to his back, left shoulder, and upper left arm when his motorcycle was struck by a car in Venice, Florida. Pugliese was diagnosed by neurologist, Dr. Singh of White Plains, New York, as having sustained an injury to the left brachial plexus. He ordered an MRI, and upon receipt of the results, plaintiff was to begin a regimen of physical therapy. However, plaintiff was arrested on January 16, 1990, and was incarcerated at the Westchester County Jail prior to the MRI examination. His status was reviewed by Dr. Charles McGowan at the Westchester County Medical Center Rehabilitative Unit shortly after his initial incarceration, and physical therapy was prescribed three times weekly beginning on April 7, 1990 and continuing through November 19, 1990. Electrostimulation with a TENS unit starting in May 1990 was also prescribed.

At the time of his transfer from Westchester County Jail on November 26, 1990, Pugliese was capable of lifting twelve pounds with his left arm. He was transferred to the Downstate Correctional Facility, and on December 10, 1990, was again transferred, this time to Mid–State Correctional Facility. He immediately sought medical attention, allegedly pointing out Dr. McGowan's letter dated September 14, 1990, which was included in Pugliese's medical file, and which recommended continuation of TENS unit electrostimulation and physical therapy. However, neither treatment was available at Mid–State. Several references were made in Pugliese's medical records which indicated the need for physical therapy and TENS unit therapy to minimize the risk of muscle atrophy. No ultimate action was taken.

Plaintiff's medical records show continual treatment by defendants Drs. Dadow and Hwong throughout his stay at Mid–State for the period of one year. By letter dated January 31, 1991, Pugliese complained to Commissioner Coughlin about the perceived denial of medical treatment. The response was to forward the letter to the Office of Health Services for appropriate action. Pugliese complained directly and in person to the Superintendent of Mid–State, Costello, without result. A grievance was filed and further letters sent, all to no avail.

Finally, in October 1991, subsequent to filing this action in federal court, Pugliese began receiving therapy and TENS treatment.

Two months later, in December 1991, Pugliese was transferred to Oneida Correctional Facility where a TENS unit, but no physical therapy, was provided. In March 1992, he was again transferred, this time to Gouverneur Correctional Facility, where he received

the full complement of physical therapy and TENS unit treatment three times weekly.

His next transfer was to Collins Correctional Facility, in September of 1992. Pugliese made an immediate request for the continued treatment. Dr. Kurtz, a physician at Collins, sought consultation from a specialist, who returned a recommendation on January 25, 1993, that Pugliese "may benefit from electric stimulation." Yet no treatment was forthcoming. Pugliese made continued requests and complaints. Dr. Kurtz responded to one request, that he would never waste the state's money on such treatment. Instead, Pugliese was prescribed visits to an occupational therapist once monthly. Pugliese also personally complained about his lack of medical treatment to the Superintendent of Collins, Herbert, with no action.

Pugliese claims that as a result of this lack of treatment, he has lost virtually all of the strength in his left arm, and could not lift one-pound weights upon his release from Collins on April 13, 1993.

### DISCUSSION

#### Summary Judgment

■ Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

■ When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–249, 106 S.Ct. at 2510–2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356.

#### Respondeat Superior

■ It is well settled that a defendant's personal involvement is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Where an inmate does no more than allege that a high level supervisor is liable because of his oversight of the prison, dismissal is proper. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987); *see also Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir.1974). Therefore, a supervisor may only be held liable for the deprivation of a person's constitutional rights if that supervisor carried some personal involvement in the deprivation. Based upon the above discussion and plaintiff's stipulation to discontinue the action against defendant Governor Cuomo, the claims against him shall be dismissed.

■ In *Williams v. Smith*, 781 F.2d 319, 323, 324 (2d Cir.1986), the Second Circuit detailed four different types of personal involvement for which a supervisor could be held constitutionally liable. A supervisory official is said to have been personally in-

volved if that official directly participated in the infraction; if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; or if he or she created a policy or custom under which the unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she was grossly negligent in managing the subordinates who caused the unlawful condition or event. *Id.*

Plaintiffs' allegations of personal involvement of Coughlin, derive from *Williams*, purporting liability where a supervisory official, after learning of a violation through a report or appeal, failed to remedy the wrong. The correspondence by plaintiff, offered as proof of this personal involvement, includes written complaints to Coughlin. These letters allege denial of needed medical treatment.

■ Coughlin acted upon the complaint received by forwarding the letter to the Office of Health Services for action to be taken. There is no gross negligence involved, no policy created that fostered a violation of plaintiff's rights, and no circumvention of action. Therefore the claims against Coughlin shall be dismissed.

### Eighth Amendment Claim

■ Plaintiff alleges that he was denied medical treatment in violation of the Eighth Amendment. In order to withstand summary judgment on his Eighth Amendment claim, plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). It is only that conduct which is incompatible with "the evolving standards of decency that mark the progress of a maturing society," *Id.* at 102, 97 S.Ct. at 290, or constitute the "unnecessary and wanton infliction of pain," *Id.* at 104, 97 S.Ct. at 291, that rises to the level of deliberate indifference toward an inmate's serious medical needs. There is, then, a two component test that the plaintiff must satisfy in order to state a cognizable claim under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *see Farmer*

*v. Brennan*, ― U.S. ―, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The first component is subjective and the second component is objective. The court must first consider whether the defendants acted "with a sufficiently culpable state of mind," and then whether the alleged injury was "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 6, 112 S.Ct. at 999.

■ In *Liscio v. Warren*, 901 F.2d 274, 276–277 (2d Cir.1990), the Second Circuit found that since plaintiff's condition was both life threatening and fast degenerating, the defendant doctor's "failure to examine plaintiff over a three day period could be found to violate" the Eighth Amendment. Thus, the Court considered both the seriousness of plaintiff's medical needs and the length of time such needs were ignored. Likewise, the refusal to schedule corrective surgery over a two year period, which left plaintiff in daily pain, but which condition was neither life threatening nor fast degenerating, was sufficient to survive a motion to dismiss. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *see also Archer v. Dutcher*, 733 F.2d 14, 16–17 (2d Cir.1984) (A prisoner must allege that she was intentionally denied needed medical care over a period of time by prison officials, while she was in extreme pain, or that medical care was completely withheld.) Additionally, deliberate defiance of express medical instructions may constitute more than mere negligence. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (*citing Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir.1970)). Furthermore, deliberate interference with medically prescribed treatment solely for the purpose of causing unnecessary pain, may be a basis for a constitutional claim under the Eighth Amendment. *Gill*, 824 F.2d at 196 (*citing Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987) (lack of permanent or severe injury does not justify the granting of summary judgment on the issue of excessive force)).

■ Here, plaintiff alleges that defendants from Mid–State and Collins interfered with his prescribed physical therapy treatments and electrostimulation with a TENS

unit. Plaintiff's claims charge more than mere medical malpractice or differences in medical opinions. He has alleged a wanton disregard for his medical needs. In support of his allegations, plaintiff repeatedly makes reference to the letter of Dr. McGowan dated September 14, 1990, which recommended continuation of TENS unit electrostimulation and physical therapy, as evidence of his medical needs. Additionally, plaintiff notes the recommendations of Dr. Hwong[1] and the specialist[2] consulted by Dr. Kurtz, concerning the necessity and benefits of continued physical therapy and electrostimulation with a TENS unit, as evidence of his medical needs. He contends that defendants were aware, or should have been aware, of his predicament from his Department of Corrections ("DOC") medical file and the physical examinations conducted by DOC personnel, as well as letters, complaints, and grievances which he forwarded. Instead of providing necessary treatment at the appropriate time, plaintiff maintains that defendants either delayed, or failed to attain, his access and its availability.

Defendants allege, however, that plaintiff's medical conditions were routinely examined and evaluated. (Def.'s Mem.Supp.Mot. Summ.J. at 9.) According to defendants, "plaintiff received considerable medical attention at all of the State prisons.... His medical needs were addressed." (*Id.*) Defendants further state that plaintiff has not been continuously supplied with all of the requested medical treatment because it was either unavailable at a particular facility or because medical decisions were rendered which opined that the requested treatment "would not be beneficial." (*Id.* at 9–14.) In support of their position, defendants assert that plaintiff has not, and cannot, produce any evidence which "shows any objective or subjective deliberate indifference on the part of Supt. Costello, Dr. Dadow, Dr. Hwong, and Supt. Herbert." (*Id.* at 9.) As for Dr.

Kurtz, defendants simply suggest that his alleged use of the word "never" was nothing more than his unpolished attempt to state that he had weighed all pertinent information and had reached the medical conclusion that plaintiff's treatment requests were inappropriate.

However, in light of the conflicting contentions, and accepting plaintiff's allegations as true as the court must for the purpose of defendants' motion for summary judgment, the court finds that questions of fact exist which prevent granting defendants motion at this time. Therefore, the remaining defendants' motion for summary judgment must be denied. Further, plaintiff's cross-motion for partial summary judgment fails to have merit.

### CONCLUSIONS

It is hereby

ORDERED, that

1. The complaint is **dismissed** against defendants Cuomo and Coughlin in its entirety;

2. The remaining defendants' motion for summary judgment is **DENIED;**

3. Plaintiff's motion for partial summary judgment on the issue of liability is **DENIED;** and

4. The trial in the above matter is scheduled for February 5, 1996, in Utica, New York. A final pretrial conference will be conducted at 9:30 a.m. with jury selection to commence immediately thereafter. The parties are hereby directed to file the following with the clerk on or before January 26, 1996: proposed voir dire questions, request to charge, exhibit list, and witness list containing a brief statement of what each witness will testify to at trial; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum, Decision

---

1. Dr. Hwong, a physician at the Mid–State Correctional Facility, introduced the following note, dated December 24, 1990, into plaintiff's medical file. During his deposition Hwong read the statement, in pertinent part, "... Injury to left shoulder. Was atrophy of deltoid muscles. He needs physical therapy as soon as possible ..." (Itkowitz Aff. Ex. 7, at 33; Ex. 15.)

2. The Orthopedic Clinic at the Erie County Medical Center recommended that plaintiff "may benefit from electric stimulation." (Itkowitz Aff. Ex. 3 p. 45, Exs. 9 and 10.)

**64**

and Order by regular mail, upon the parties to this action.