Timothy **HARNETT**, also known as **Shaiabdullah Muhammad**, Plaintiff,

v.

E. **BARR**; John Doe # 1; L. **Peary**; and N. **Bezio**, Defendants.

No. 9:06–CV–1044 (DNH/GJD).

United States District Court, N.D. New York.

March 7, 2008.

---

Timothy Harnett, Plaintiff, Pro Se.

Andrew M. Cuomo, Attorney General of the State of New York, Richard Lombardo, Esq., Asst. Attorney General, Department of Law, The Capitol, Albany, NY, for Defendants.

## MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

In his original civil rights complaint, plaintiff alleged that defendants interfered with the practice of his religion in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (Dkt. No. 1). Plaintiff sought declaratory, injunctive, and substantial monetary relief.

On April 17, 2007, defendants filed a motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 18). Plaintiff responded by filing a cross-motion to amend and supplement the complaint

pursuant to Fed.R.Civ.P. 15(a) and 15(d). (Dkt. No. 20). Plaintiff included a proposed amended complaint with his motion. (Dkt. No. 20–1). Defendants filed a memorandum of law in opposition to the motion to amend and supplement. (Dkt. No. 25). On December 12, 2007, plaintiff filed a motion to compel defense counsel to produce the name of plaintiff's "John Doe" defendant. (Dkt. No. 33). For the following reasons, the motion to amend the complaint will be granted in part, and denied in part, and the motion to dismiss will be reviewed as directed to the remaining causes of action in the amended complaint and will be denied. The motion to compel will be denied.

## I. *DISCUSSION*

### A. *Motion to Dismiss*

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)(per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir.1991) (citation omitted).

### B. *Motion to Amend the Complaint*

■ In using its discretion in determining whether to allow a party leave to amend, the court must follow Fed.R.Civ.P. 15(a) which provides that leave to amend will be granted "freely . . . when justice so requires." Fed.R.Civ.P. 15(a)(2). *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The court may also, "on just terms", grant a party leave to supplement, setting forth transactions, occurrences, or events that happened after the date of the pleading to be supplemented. Fed.R.Civ.P. 15(d). A court may allow supplementation even if the original pleading is defective in stating a claim or defense. *Id.* The standards for a motion to amend and a motion to supplement are the same. *See Smith v. Goord*, 04–CV–6432, 2006 WL 2850597, *1, 2006 U.S. Dist. LEXIS 74015, *3–4 (W.D.N.Y. Sept. 22, 2006). This is true if the statute of limitations has not run prior to the filing of the supplemental claims or the addition of proposed new defendants. *Id.* In this case, there is no issue regarding the statute of limitations.

■ Notwithstanding the liberality with which amendments are allowed, a court may deny a motion to amend when it appears that the amendment would be futile.[1] *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993)(citing *inter alia Foman*, 371 U.S. at 182, 83 S.Ct. 227). In *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990), the court stated that where the proposed amendments have no merit, the court may deny the motion to amend. An amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir.2002) (citation omitted). This standard

---

1. There are other reasons for denying a motion to amend, including undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by previously allowed amendments, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. 227. Defendants do not claim that any of these alternative basis for denial of the motion to amend apply.

is applicable when the motion to amend is made as a cross-motion to a motion to dismiss under Rule 12(b)(6).[2] *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001).

With respect to new parties, Fed. R.Civ.P. 20 provides that defendants may be joined in one action if the right to relief asserted against them is asserted jointly, severally or in the alternative and arose out of the same transaction, occurrence or series of transactions or occurrences. Fed.R.Civ.P. 20(a)(2)(A). Rule 20 also requires that any question of law or fact common to all defendants will arise in the action. Fed.R.Civ.P. 20(a)(2)(B).

A *pro se* litigant in particular should be given every opportunity to show that he has a valid claim. *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir.2000)(citing *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984)). It has been held, however, that the duty of liberal treatment does not include the duty to re-write the plaintiff's complaint for him. *See Joyner v. Greiner*, 195 F.Supp.2d 500, 503 (S.D.N.Y.2002) (citation omitted).

## II. Facts

### A. Original Complaint (Dkt. No. 1).

Plaintiff's original complaint names various officials at Upstate Correctional Facility as defendants. These officials include, E. Barr and "John Doe" corrections officers; R.K. Woods, Superintendent; and L. Peary, the Inmate Grievance Program Supervisor. Complaint. Plaintiff alleges that he is a Sunni Muslim, and he practices the Islamic religion. Complaint ¶ 1.[3] Plaintiff alleges that on October 17, 2005, during the month of Ramadan,[4] his cell was searched by defendant Barr. *Id.* ¶¶ 10–12. Plaintiff states that defendant Doe was present, but was supervising the plaintiff outside of the cell. *Id.* ¶ 10. Plaintiff states that the search was conducted at approximately 7:30 p.m., after he had been served his evening meal and after he was given his "Sahoor bag." *Id.* ¶ 13.

Plaintiff explains that a "Sahoor bag" contains a breakfast meal that is given to Muslim inmates in the evening during Ramadan so that they may eat in the morning before sunrise. *Id.* at ¶ 14. Plaintiff states that during the search of his cell, defendant Doe asked plaintiff if the officers could put his food "on a piece of paper" because he was not allowed to have the plastic in which the food was wrapped. *Id.* ¶ 17, 20. Plaintiff states that he agreed, and defendant Barr initially complied. *Id.* ¶ 19.

However, plaintiff states that defendant Barr suddenly began confiscating plaintiff's property and threw his food on the floor. *Id.* ¶ 21. Plaintiff claims that defendant Barr threw away the food in the Sahoor bag and additional food that plaintiff had saved from his evening meal.[5]

---

**2.** If the motion to amend had been made as a cross-motion to one for summary judgment, the standard would have been different, and plaintiff would have to show that the evidence in support of his claim or claims would have raised an issue of triable fact. *See Milanese*, 244 F.3d at 110. This slightly stricter standard is not applicable to this case.

**3.** The paragraph numbers to which this court is referring begin at page 5 of the complaint and are listed in the "Facts" section of the complaint.

**4.** Ramadan is a Muslim holiday, during which celebrants must fast from sunrise to sunset. The fasting during Ramadan is a central practice of the Islamic religion. Complaint (Facts) ¶ 12.

**5.** Plaintiff alleges that he had the leftover food because he did not eat his evening meal. He states that he was engaging in a practice

When plaintiff complained to defendant Doe that defendant Barr was throwing away plaintiff's Ramadan food, defendant Doe stated that plaintiff was not allowed to have food in his cell. *Id.* ¶¶ 29–30.

Plaintiff states that defendants Barr and Doe violated plaintiff's First Amendment and RLUIPA rights by throwing away his Ramadan food. *Id.* ¶ 35. Plaintiff states that inmates of other religions are allowed to keep food in their cells during their religious holidays, and may be attempting to claim that defendants Barr and Doe violated his right to equal protection. *Id.* ¶¶ 32, 33, 35. Plaintiff claims that because of defendants' actions, he was not able to eat until the next Ramadan meal was served. *Id.* ¶ 34.

Plaintiff states that he filed a grievance against defendants Barr and Doe on October 18, 2005, which was decided by the Inmate Grievance Resolution Committee (IGRC) on October 27, 2005. *Id.* ¶ 36. Plaintiff states that he appealed the denial of the grievance, and that defendant Woods affirmed that denial. *Id.* ¶ 37. Plaintiff claims that he appealed Superintendent Woods's decision on November 10, 2005, and that Thomas G. Eagen "accepted my grievance in part on Dec. 7, 2005." [6] *Id.* ¶ 38.

Plaintiff states that Ramadan ended on November 3, 2005, however, he was not given his "sweet breakfast" according to his religious requirements. *Id.* ¶¶ 40–41. Plaintiff states that the end of Ramadan is marked by the "Eid ul Fitr" breakfast, followed by prayer, and the "Eid ul Fitr" feast. *Id.* ¶ 42. Plaintiff then states that the facility accommodates inmates with the "sweet breakfast," but the same allowance is not made for inmates that are subject to disciplinary restrictions. [7] *Id.* ¶ 44. Plaintiff states that he filed a "complaint" dated November 10, 2005, which he mailed on November 14, 2005, addressed to the IGRC; Superintendent Woods; and Commissioner Glenn Goord. *Id.* ¶ 45. Plaintiff states that he complained about the denial of his sweet breakfast; the denial of permission to retain food in his cell on Mondays and Thursdays; and requested permission to hem his pants above the ankle in accordance with his religious beliefs. [8] *Id.* ¶ 46.

Plaintiff states that the IGRC did not respond to his November 10, 2005, "complaint." [9] *Id.* ¶ 52. He claims that Commissioner Glenn Goord referred his November 10, 2005 complaint to John H. Nuttall, the Deputy Commissioner of Programs, but that neither Goord nor Nuttall remedied the problem. *Id.* ¶ 53–54. However, it does appear that Deputy Commissioner Nuttall wrote to plaintiff regarding this matter on November 29, 2005. *Id.* ¶ 54. Plaintiff does not state the contents of Deputy Commissioner Nuttall's letter.

Plaintiff then states that his October 18, 2005 grievance against defendants Barr and Doe "ignited a series of retaliatory acts" by defendant Peary, the Inmate Grievance Program Supervisor at Upstate.

---

whereby he would fast for more than one day. Complaint (Facts) ¶¶ 23–26.

**6.** Although plaintiff states that Thomas Eagen "accepted" the grievance in part, he does not explain what that result entailed.

**7.** It is unclear whether plaintiff is attempting to state that he did not get the sweet breakfast because he was subject to disciplinary restrictions.

**8.** It is unclear when the hemming issue arose. Plaintiff does not claim that anyone denied him permission to hem his pants prior to filing a "complaint." It is also unclear what plaintiff meant by the request to retain food in his cell on Mondays and Thursdays. This seems to be unrelated to the Ramadan issue.

**9.** Plaintiff calls his October 18, 2005 submission a "grievance," while he calls the November 10, 2005 submission a "complaint."

*Id.* ¶ 55. Plaintiff states that on October 26, 2005, defendant Peary interviewed plaintiff about his October 18, 2005 grievance, and that during the interview, she appeared to be angry about the grievance. *Id.* ¶¶ 59–60. Plaintiff claims that when he told defendant Peary that the time for responding to his grievance had expired, they had an argument regarding when the grievance was received, and that defendant Peary walked away from plaintiff. *Id.* ¶¶ 62–65. Plaintiff then states that defendant Peary failed to remedy the problems raised in the October 18, 2005 grievance. *Id.* ¶ 65.

Plaintiff claims that defendant Peary willfully intercepted the November 10, 2005 grievance that he mailed to the IGRC in retaliation for his October 18, 2005 grievance. *Id.* ¶ 68. Plaintiff states that he wrote a letter to defendant Peary on November 16, 2005 [10] inquiring about the November 10, 2005 grievance, but defendant Peary "furthered her retaliation" by failing to respond to the letter. *Id.* ¶¶ 68, 70. Copies of the November 16 letter were sent to defendant Woods and to Commissioner Goord. *Id.* ¶ 69. Plaintiff states that defendant Woods responded to plaintiff's letter on November 17, 2005.[11] Plaintiff claims that instead of remedying the situation, defendant Woods sent his letter to the grievance office for investigation and response by the grievance supervisor. *Id.* ¶ 72.

Plaintiff states that he sent a letter to Thomas Eagen on November 21, 2005, complaining that plaintiff's November 10, 2005 grievance had never been processed. *Id.* ¶ 73. Plaintiff alleges that Mr. Eagen never responded to plaintiff's November 21 letter. *Id.* ¶ 74. On November 22, 2005, plaintiff wrote to defendant Peary, complaining that plaintiff had never received a decision on his November 10, 2005 grievance, and therefore, plaintiff wished to appeal to the Superintendent. *Id.* ¶ 76.

Defendant Peary responded to plaintiff's letter on November 23, 2005 by telling him that the November 10, 2005 grievance was not on file, and that he should submit a copy for processing. *Id.* ¶¶ 77–79. Plaintiff states that he complied with defendant Peary's direction, but that he never received a response, and defendant Peary did not process the grievance. *Id.* ¶¶ 83–84. As a result of defendant Peary's actions, plaintiff filed complaints against her, dated November 21, 23, and December 19, 2005, and forwarded copies of those complaints to defendant Woods and Glenn Goord. *Id.* ¶¶ 85–86.

Plaintiff claims that defendant Woods returned his November 21, 2005 complaint to him and failed to investigate the alleged misconduct. *Id.* ¶ 88. On December 27, 2005, N. Bezio responded to plaintiff's December 19, 2005 complaint, but failed to remedy the problem. *Id.* ¶ 89. Plaintiff claims that Glenn Goord never responded to any of plaintiff's complaints.[12] Plaintiff states that his October 18, 2005 grievance was the motivating factor for defendant Peary's failure to process any of plaintiff's subsequent grievances. *Id.* ¶ 92.

Plaintiff also claims that defendant Barr began retaliating against him because of the October 18, 2005 grievance. *Id.* ¶ 94. He states that he was in the mental health observation unit between December 28,

---

**10.** Plaintiff states that the letter was dated November 16, 2005, even though he mailed the letter on November 17, 2005.

**11.** It is unclear whether plaintiff has the incorrect date or whether defendant Woods actually responded to plaintiff's letter on the same day that he sent it.

**12.** This statement is inconsistent with plaintiff's own statements in ¶¶ 53–54 of the complaint in which he claims that Glenn Goord referred plaintiff's November 10, 2005, complaint to defendant Nuttall for review.

and December 30, 2005. Plaintiff claims that when he returned to his regular housing unit on December 30, defendant Barr refused to give him some of his property. *Id.* ¶¶ 95–99. Plaintiff states that on January 20, 2006, he asked defendant Barr about his property, and that defendant Barr stated that he did not know. *Id.* ¶¶ 101–102. Plaintiff filed a complaint against defendant Barr on January 23, 2006, and sent the complaint to the IGRC, defendant Woods, and Glenn Goord. *Id.* ¶ 104.

Plaintiff was transferred to Southport Correctional Facility on January 31, 2006, and Glenn Goord referred plaintiff's complaint to Lucien LeClaire, who responded to plaintiff by letter dated February 10, 2006. *Id.* ¶¶ 105–106. Plaintiff then states that he was unable to exhaust his administrative remedies due to the transfer, and "[t]hereby, E. Barr violated [his] right to redress grievances." *Id.* ¶ 108.

### B. *Proposed Amended Complaint (AC)* (Doc. No. 20–1)

In plaintiff's motion to amend his complaint, he states that he wishes to add defendants Glenn Goord; Thomas Eagen; N. Bezio and S. Paquin. (Dkt. No. 20 at p. 2). Plaintiff also wishes to clarify the facts asserted in his original complaint regarding the liability of all defendants. *Id.* Plaintiff also wishes to add supplemental claims against defendant Paquin that occurred subsequent to the filing of the original complaint. *Id.*

A review of the proposed amended complaint shows that most of the facts remain the same. Interestingly enough, in his original complaint, plaintiff actually listed Goord, Eagen, and Bezio as defendants, but then crossed out the names. (Dkt. No. 1 at pp. 1–3). In the proposed amended complaint, plaintiff wishes to again include Goord, Eagen, and Bezio by adding some factual allegations against them. Plaintiff expands on his claims against defendant Woods regarding plaintiff's appeal of the October 18, 2005 grievance by stating that defendant Woods "learned" of defendant Barr and Doe's misconduct "through the facility's appeals process and failed to remedy the wrong" when he denied the grievance on November 3, 2005. *Compare* Complaint ¶ 37 *with* AC ¶ 14.

Plaintiff's original complaint simply states that he appealed defendant Woods' denial to the CORC and that Thomas Eagen accepted the grievance in part on December 7, 2005. Complaint ¶ 38. However, in the proposed amended complaint, plaintiff wishes to make Thomas Eagen and Glenn Goord defendants by alleging that they rendered a decision "not in [plaintiff's] favor" and "failed to remedy the wrong." AC ¶ 14. With respect to the November 10, 2005 complaint that plaintiff sent to the IGRC, Woods, and Goord, plaintiff now wishes to add Goord as a defendant by stating that "instead of amending the problem, [he] referred the report to John H. Nuttall." AC ¶ 20. Each time that plaintiff discusses the new proposed defendants in the amended complaint, he states that they "learned" about the problem through a report or appeal, but failed to remedy the wrong. AC ¶¶ 14, 20, 25, 38. Plaintiff wishes to add N. Bezio as a defendant, making the same claim against him as in the original complaint regarding the failure to remedy plaintiff's complaint about defendant Peary. AC ¶ 30.

The "supplemental" material begins at paragraph 39 of the proposed amended complaint and continues until paragraph 48. Plaintiff states that after he filed this civil action, he submitted a Freedom of Information Law [13] (FOIL) request to pro-

---

**13.** It is assumed that plaintiff is referring to New York's Freedom of Information Law, N.Y. Pub. Officers' Law § 85 *et seq.*

posed defendant Paquin, the Inmate Records Coordinator at Upstate Correctional Facility. AC ¶¶ 39–40. When plaintiff did not receive a response to his request, he sent another letter to Paquin, with a copy to defendant Woods. AC ¶¶ 40–41. Plaintiff concedes that proposed defendant Paquin responded to plaintiff's letter on January 8, 2007, acknowledging the receipt of plaintiff's FOIL request. AC ¶¶ 41–42. According to plaintiff, proposed defendant Paquin's letter stated that the response to plaintiff's request would be forwarded when the documents had been collected and reviewed. AC ¶ 42.

Plaintiff requested Log Book entries for October 17, 2005, so that he could identify the "John Doe" involved in the cell search that is the subject of this lawsuit. Plaintiff claims that proposed defendant Paquin's response had the incorrect year listed for the Log Book entries in order to retaliate against plaintiff for filing this action and in order to "cover up" the misconduct by defendants. AC ¶¶ 43–48. Plaintiff apparently did not obtain the documents that he seeks. Plaintiff claims that proposed defendant Paquin violated the Department of Correctional Services Directives and New York State Law in failing to properly process plaintiff's request. AC ¶ 46. Plaintiff also claims that S. Paquin conspired with defendant Woods to deprive plaintiff of the requested document in retaliation for filing this action. *Id.*

The proposed amended complaint contains seven causes of action:

(1) First and Fourteenth Amendment and RLUIPA violations against defendants Barr and Doe as a result of the alleged destruction of plaintiff's food during the cell search.

(2) First and Fourteenth Amendment and RLUIPA violations against defendants Peary, Woods, Eagen, and Goord for failing to remedy Barr and Doe's alleged misconduct.

(3) First and Fourteenth Amendment retaliation and RLUIPA violations against defendant Peary as the result of her alleged failure to process plaintiff's grievances.

(4) First and Fourteenth Amendment and RLUIPA violations against defendants Woods, Eagen, Bezio, and Goord when they allegedly failed to remedy defendant Peary's misconduct.

(5) First and Fourteenth Amendment retaliation against defendant Barr for failing to return plaintiff's property.

(6) First and Fourteenth Amendment violations against defendant Goord for failure to remedy defendant Barr's alleged retaliation.

(7) First and Fourteenth Amendment retaliation against defendants Paquin and Goord for failing to provide plaintiff with the information requested to identify "John Doe."

## C. *Religion Claims*

■ Plaintiff brings his claims under the First and Fourteenth Amendments as well as RLUIPA. RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. *Marria v. Broaddus,* 200 F.Supp.2d 280, 297 (S.D.N.Y.2002)(citing 42 U.S.C. § 2000cc–2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest and that it is the least restrictive means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

■ Plaintiff also claims that defendants' actions violated his First Amendment rights. It is well-settled that inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003)(citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This framework is one of reasonableness and is less restrictive than ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford,* 352 F.3d at 588.

In *O'Lone,* the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349, 107 S.Ct. 2400 (quoting *Turner,* 482

U.S. at 89, 107 S.Ct. 2254). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord,* 467 F.3d 263, 274 n. 4 (2d Cir.2006) (citations omitted). In *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

Plaintiff in this case appears to have more than one religion claim. He first alleges that defendants Barr and Doe violated his rights under the Constitution and RLUIPA by throwing away his Ramadan food during a cell search. Plaintiff also seems to have another, less clear issue. In the original complaint, he alleges that he submitted a "complaint" or a grievance, dated December 10, 2005, in which he complained that he was denied his "sweet breakfast" at the end of Ramadan because he was in disciplinary segregation. Complaint ¶¶ 40–50. However, plaintiff also appears to claim that he requested permission to hem his pants above his ankles and also requested permission to save food in his cell on Mondays and Thursdays in accordance with his religious beliefs. Although the proposed amended complaint contains some additional facts, it does not completely clarify the issue, and plaintiff has not included these facts as a basis for his "causes of action." AC ¶¶ 15–20 & pp. 20–22.

In their motion to dismiss, defendants argue that plaintiff's allegation that Officer Barr confiscated plaintiff's religious meal fails to state a cause of action under sec-

tion 1983. Defendants' Memorandum of Law at 2–3. Defendants do not address plaintiff's other claims.[14] In *Ford v. McGinnis,* the Second Circuit denied summary judgment in a case in which a plaintiff was claiming that he had been denied only one religious meal. 352 F.3d at 584–86. In fact, the issue in *Ford* was precisely the Eid ul Fitr meal at the end of Ramadan, and whether these meals would be served to inmates in disciplinary housing. *Id.* at 584–85.

■ The denial of "one religious service" does not constitute a substantial burden on the inmate's religious rights. *See Gill v. DeFrank,* 2000 WL 897152, *1, 2000 U.S. Dist. LEXIS 9122, *4–5 (S.D.N.Y. June 30, 2000)(citing cases)(emphasis added), *aff'd,* 8 Fed.Appx. 35 (2d Cir.2001). *Gill,* however, and the cases cited therein were dismissed on motions for summary judgment. *Id. See also Troy v. Kuhlmann,* 96 Civ. 7190, 1999 WL 825622, 1999 U.S. Dist. LEXIS 16027 (S.D.N.Y. Oct. 15, 1999)(summary judgment); *Harris v. Lord,* 957 F.Supp. 471 (S.D.N.Y.1997) (summary judgment). The last case cited in *Gill* for this proposition was based on a motion to dismiss; however, a review of that case shows that the court denied the motion on the First Amendment claims. *See Dingle v. Lowery,* CV 88–2648, 1995 WL 302508, 1995 U.S. Dist. LEXIS 22192 (E.D.N.Y. May 5, 1995). *Ford* was decided more recently than the cases cited by defendants. *See also Shakur v. Selsky,* 391 F.3d 106, 120 (2d Cir.2004)(reversing the district court's holding that "the missing of a single religious feast simply does not amount to a 'substantial burden' on his religious exercise")(citing *Ford, supra).*

Thus, without more, it cannot be stated that plaintiff could prove no set of facts that would entitle him to relief against defendants Barr and Doe. Additionally, although plaintiff does not specify that any particular defendant denied him the sweet breakfast at the end of Ramadan, denied him the ability to retain food in his cell on Mondays and Thursdays,[15] or denied him permission to hem his pants, plaintiff may be challenging a regulation or directive. It appears from both the original and the proposed amended complaints that Glenn Goord referred plaintiff's concerns regarding this issue to John H. Nuttall [16] for investigation. Complaint ¶¶ 46–53; AC ¶¶ 15–20.

Dismissal of plaintiff's First Amendment or RLUIPA claims is not warranted at this time. The issues regarding his November 10, 2005 complaint about the end-of-Ramadan meal, the ability to retain food in his cell on specific days, and the request to hem his pants for religious purposes may be explored in discovery. There is always the possibility that a summary judgment motion will resolve the issues.

### D. *Retaliation*

■ Retaliation for the exercise of a constitutional right is a separate claim from the plaintiff's substantive First Amendment or statutory RLUIPA claim. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988). In order to establish a

---

14. It appears that plaintiff may also be attempting to allege an Equal Protection claim when he states that other religions are allowed to keep food in their cells and are allowed religious clothing according to their beliefs.

15. It is assumed that this is a separate request and not related to the incident involving defendants Barr and Doe.

16. Plaintiff does not seek to add John Nuttall as a defendant.

claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003)(citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs must set forth nonconclusory allegations. *Id.* (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Defendants argue that claims of retaliation against defendants Peary and Barr should be dismissed. Defendants point out that the refusal to process grievances does not rise to the level of a constitutional violation. Plaintiff alleges that after he had an argument with defendant Peary about his October 17, 2005 grievance, she began to retaliate against him by ignoring or refusing to process his subsequent grievances.

■ It has been held that because grievance procedures are undertaken voluntarily by the State, refusal to process a grievance or the improper handling of a grievance does not by itself rise to the level of a constitutional violation. *Ramos v. Hanslmaier,* 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, \*6–7 (S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). Neither a state's violation of those procedures, nor the failure to enforce them gives rise to a claim under section 1983. *Id. See also Bullock v. Horn,* CV–99–1402, 2000 U.S. Dist. LEXIS 21573, \*22–23 (M.D.Pa.2000)(plaintiff claimed improper refusal to process a grievance). Thus, defendants are correct, that as a separate issue, any allegation that defendant Peary

refused to file plaintiff's grievances does not state a claim.

■ At the same time, however, prisoners do have a constitutional right to petition the government for redress of grievances, and prison officials may not retaliate against inmates for exercising that right. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Plaintiff alleges that the reason that defendant Peary stopped processing his grievances was because she was angry with plaintiff over the October 18, 2005 grievance and was retaliating against him for filing that grievance. Again, defendants' motion is directed at the pleadings alone, and plaintiff's allegations must be accepted as true. Although defendants claim that there is no causal connection between plaintiff's protected action of filing a grievance, and defendant Peary's conduct in failing to process the subsequent grievances, that determination cannot be based on the complaint and the proposed amended complaint alone.

Plaintiff alleges that he had an argument with defendant Peary when she interviewed him regarding the October 18, 2005 grievance, that he had never had any problems with his grievances prior to this argument, and as shortly thereafter as November 10, 2005, plaintiff began to have trouble with the grievance program. Plaintiff claims that after failing to respond to several of plaintiff's letters, defendant Peary told plaintiff that his November 10, 2005 grievance was not on file. Plaintiff states that he subsequently filed several complaints against defendant Peary. Plaintiff states that the content of his December 19, 2005 complaint to defendant Woods prompted a referral to proposed new defendant Bezio, who according to plaintiff, did not remedy the situation. AC ¶ 30.

Again, based on the pleadings alone and looking at the facts in the light most favorable to plaintiff, it cannot be said that there is no set of facts that plaintiff could prove to sustain a claim against defendant Peary for retaliation.

■ Plaintiff also alleges that defendant Barr retaliated against him by refusing to return some property to plaintiff when he was returned to his cell after he spent some time in the Mental Health Unit. Complaint ¶¶ 94–108. In plaintiff's proposed amended complaint, he also alleges that when he was returned from the Mental Health Unit,[17] defendant Barr intentionally placed him in a cell with a known enemy. AC ¶ 33. Defendants first argue that the delay between the October 18, 2005 grievance and the December 2005 property incident[18] prevents plaintiff from showing that there is a causal connection between the two. Defendants cite *Hollander v. American Cyanamid, Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) for the proposition that "a delay of three months between the protected speech and the alleged adverse action was fatal to a showing of causation." Defendants' Mem. of Law at p. 6.

This was not the specific holding in *Hollander*. There was no bright line ruling that three months was fatal to a showing of causation. In fact, in *Mortara v. Katkocin*, 05–CV880, 2007 WL 4105283, *6, 2007 U.S. Dist. LEXIS 84927, *17–18 (D.Conn. Nov. 16, 2007), the court held that six months was not such a long delay as to preclude a jury from finding a causal connection. The delay in this case was slightly over two months. In any event, the

defendant in *Hollander* made a motion for summary judgment, and thus, more factual development was present in Hollander than exists in this case. The retaliation claim as against defendant Barr based solely on the pleadings will not be dismissed.

### E. *Personal Involvement*

■ Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

---

**17.** Plaintiff alleges that he was in the Mental Health Observation Unit from December 28, 2005, until December 30, 2005. Complaint ¶ 95; AC ¶ 33.

**18.** Plaintiff raised only the property incident in the original complaint, therefore, defen-

dants did not mention the allegation of improper cell placement. However, since the cell placement and the property incident occurred at approximately the same time, it is assumed that defendants would still argue that the delay was too lengthy to support a claim of retaliation.

Plaintiff names Superintendent Woods as a defendant. In the original complaint plaintiff alleges that defendant Woods denied the appeal of plaintiff's October 18, 2005 grievance. Complaint ¶ 37. In the proposed amended complaint plaintiff claims that defendant Woods was personally involved because he failed to "remedy" the violation after hearing of the misconduct through the appeal process. AC ¶ 14. The rest of the claims against defendant Woods involve plaintiff sending him letters or complaints prematurely and defendant Woods referring these letters to the appropriate staff or failing to respond to the letter. Complaint ¶¶ 71–72 (referred letter regarding November 10, 2005 complaint); 86, 88 (failed to investigate November 21, 2005 letter regarding defendant Peary); 104 (plaintiff merely states that he sent a complaint to defendant Woods and others on January 23, 2006). *But see* AC ¶ 30 (defendant Woods referred a December 19, 2005 complaint to N. Bezio for investigation).

█ It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement. *Smart v. Goord*, 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006). The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation. *Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F.Supp.2d 342, 347 (W.D.N.Y.2007). Some courts have held that if the supervisory official acts personally in denying a grievance at various stages of the grievance process, he may be sufficiently involved in failing to remedy the situation. *See Atkinson v. Selsky*, 03 Civ. 7759, 2004 WL 2319186, *1, 2004 U.S. Dist. LEXIS 20560, *2–4 (S.D.N.Y. Oct. 15, 2004)(denial of grievance sufficient for personal involvement). *See also Williams v. Smith*, 781 F.2d 319, 324 (2d Cir.1986)(finding sufficient personal involvement).

In *McKenna v. Wright*, 386 F.2d 432, 437–38 (2d Cir.2004), the Second Circuit stated that it was "questionable" whether the adjudicator's rejection of a grievance would make him liable for the conduct of which the inmate complained. However, the court also stated that the supervisory defendant would be retained in the case because of his supervisory responsibility over the medical program at the facility. *Id.* The court stated that when allegations of improper denial of medical treatment "come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." *Id.* at 438 (emphasis added).

█ It appears that the distinction is whether the supervisory official is confronted with an alleged violation that has ended or whether he is confronted with a "continuing violation." It has been held that "an appropriate guiding principle" for determining personal responsibility is where a grievance alleges an "ongoing" constitutional violation, the supervisory official who reviews the grievance is "personally involved" if he is confronted with a situation that he can remedy directly. *Hall v. Leclaire*, 06 Civ. 946, 2007 WL 1470532, 2007 U.S. Dist. LEXIS 36951 (S.D.N.Y. May 22, 2007)(M.J. Francis), *accepted in part and rejected in part on other grounds*, 2007 WL 2815624, 2007 U.S. Dist. LEXIS 72715 (S.D.N.Y. Sept. 24, 2007). If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to "remedy" a violation.

The only grievance that defendant Woods reviewed directly was the appeal of plaintiff's October 18, 2005 grievance. In

that grievance, plaintiff was complaining about alleged misconduct by defendants Barr and Doe. However, the alleged misconduct had already occurred, and plaintiff was not complaining about an "ongoing" violation. None of the other complaints or letters to defendant Woods were decided by him through the proper grievance channels. The referral of plaintiff's letters back to the grievance supervisor or to other staff members for investigation does not make him personally responsible for the alleged violations in those letters. Because in both the original and the proposed amended complaints, defendant Woods was either presented with a grievance in which the alleged misconduct had already been completed or presented with a letter that he referred to other staff for investigation, any claim as against defendant Woods will not be allowed.[19]

In his proposed amended complaint, plaintiff wishes to add more supervisory officials. He seeks to add Commissioner Goord and Thomas Eagen, the Director of the Inmate Grievance Program in Albany. As with defendant Woods, the only grievance that defendant Eagen may have personally reviewed in accordance with the proper grievance channels was the appeal of the October 18, 2005 grievance. In the original complaint, plaintiff states that Director Eagen "accepted" the grievance "in part," while in the proposed amended complaint, plaintiff alleges that Director Eagen rendered a decision "not in [plaintiff's] favor."[20] Complaint ¶ 38; AC ¶ 14.

Regardless of the way that plaintiff characterizes the affirmance of the denial of his grievance because the conduct by defendants Barr and Doe was completed, Director Eagen could not be personally responsible for not "remedying" the alleged violations. Plaintiff's other claim against defendant Eagen involves sending a letter to him, complaining about defendant Peary. AC ¶ 25. This simply is insufficient to allege the requisite personal involvement of Director Eagen.

Proposed defendant Goord was the Commissioner of the Department of Correctional Services at the time that plaintiff filed this action.[21] In the original complaint, plaintiff alleges that he appealed his October 18, 2005 grievance to the Central Office Review Committee (CORC) and Thomas G. Eagen. Complaint ¶ 38. In the proposed amended complaint, he adds proposed defendant Glenn Goord as one of the individuals to whom he appealed the denial of the October 18, 2005 grievance. AC ¶ 14. First, the court notes that appeals of grievances to the CORC are not decided by the Commissioner himself,[22]

---

**19.** For purposes of injunctive relief against Woods, the plaintiff has been transferred to another correctional facility. In his complaints, plaintiff alleges only that the policy at Upstate violated his constitutional rights, thus, plaintiff's transfer to another facility would render moot any claims for injunctive relief. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir.2006) (citations omitted).

**20.** Under the regulations governing the grievance process, the IGP Director "is not a voting member of the CORC." N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(d)(2)(iii). Because Director Eagen is *not* a voting member of the CORC, it would be very difficult for him to be "personally involved" in a decision that was made by the Committee.

**21.** The current Commissioner is Brian Fischer.

**22.** The CORC consists of "the deputy commissioner and counsel, deputy commissioner for correctional facilities, deputy commissioner for program services, deputy commissioner for administrative services, and the deputy commissioner and chief medical officer, or their designees expressly authorized to act for them." N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(d)(2)(I). The regulation also provides that a representative for the office of diversity management will attend CORC hearings and have input on discrimination grievances, but will not vote. *Id.* The Commissioner of the Department of Correctional Services is not on the CORC.

and in any event, as stated above, former Commissioner Goord was not in a position to remedy the wrong alleged by plaintiff. Plaintiff's Ramadan food had already been destroyed, and he had already been denied his "sweet breakfast" at the end of Ramadan.[23]

The other allegations against proposed defendant Goord involve his alleged referral of plaintiff's letters to other staff members for investigation. AC ¶¶ 20, 38. As stated above, this conduct is insufficient to establish proposed defendant Goord's personal involvement. Thus, plaintiff has not alleged sufficient personal responsibility of proposed defendant Goord.[24]

In his proposed amended complaint plaintiff also seeks to add Captain N. Bezio as a defendant. AC ¶ 30. Captain Bezio was the individual assigned by defendant Woods to investigate defendant Peary's allegedly retaliatory conduct. According to the proposed amended complaint, Captain Bezio wrote plaintiff a letter dated November 27, 2005, but failed to "amend the problem." *Id.* If, in fact, defendant Peary was retaliating against plaintiff by failing to process his grievances, and the conduct was ongoing, but Captain Bezio did not remedy the situation as the result of his investigation, then Captain Bezio could have been personally involved in an alleged constitutional violation. Plaintiff does not specify what investigation was conducted or what Captain Bezio's November 27, 2005 letter stated. Without more facts, and assuming the plaintiff's allegations are true, plaintiff states a claim against defendant Bezio. Thus, plaintiff's

motion to amend is granted to the extent that it adds defendant Bezio and the claim that he failed to remedy the allegedly continuing violations committed by defendant Peary.[25]

### F. *Defendant Paquin and the Supplemental Claims*

In the proposed amended complaint, plaintiff claims that as a result of filing this civil action, defendant Paquin has impeded plaintiff's ability to obtain documents that would allow plaintiff to identify "John Doe." AC ¶¶ 39–48. Proposed defendant Paquin is the Records Coordinator at Upstate Correctional Facility. Plaintiff alleges that he filed a FOIL request in December of 2006 which was initially ignored. Plaintiff states that in his request, he asked for Log Book records from October 17, 2005 so that he could determine the name of the individual who was with defendant Barr during the search of plaintiff's cell.

Plaintiff states that on January 8, 2007, Paquin wrote to plaintiff, acknowledging the receipt of his FOIL request for a "copy of the Log Book on 10/17/06." AC ¶¶ 41–42 (emphasis added). The letter stated that the documents would be forwarded to plaintiff when they were collected and reviewed. Plaintiff claims that by writing the incorrect year[26] in his letter, proposed defendant Paquin was somehow trying to "cover up a retaliatory act." AC ¶ 42. Plaintiff then states that four months went by without a response from S. Paquin. AC ¶ 43. Plaintiff states that defendant Paquin failed to comply with

---

**23.** In the proposed amended complaint, plaintiff seems to claim that he included the breakfast claim in the CORC appeal of the October 18, 2005 grievance.

**24.** Proposed defendant Goord is no longer the Commissioner of the Department of Correctional Services.

**25.** Once again, this court is in no way making any findings on the merits of plaintiff's allegations, nor is it ruling out the possibility that plaintiff's claims might later be dismissed on summary judgment.

**26.** The incident in this case occurred on October 17, 2005.

state law and regulations in handling plaintiff's FOIL request. AC ¶¶ 45–46. Finally, plaintiff alleges that this behavior shows that defendant Paquin conspired with defendant Woods to retaliate against plaintiff for filing this action.

Plaintiff's motion to add this supplemental claim will not be granted. First, any claim that Paquin violated state law or directives in handling plaintiff's FOIL request does not automatically give rise to a separate basis for federal relief. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 191–93 (2d Cir.1994)(the mere violation of state law does not automatically give rise to a violation of federal constitutional rights).

There is absolutely no basis for plaintiff to allege that Records Coordinator Paquin was retaliating against plaintiff for filing this lawsuit. Plaintiff bases his claim on the fact that Paquin made a mistake when writing the year of the Log Book that plaintiff was seeking. Plaintiff never states that he attempted to correct this error. In any event an error in the date of plaintiff's request would be understandable since plaintiff made his request in December of 2006, and it would not have been unusual for the request to have involved October of 2006.

 The New York Freedom of Information Law has specific procedures that must be followed. Although plaintiff in this case alleges that he never received the requested documents, he does not allege that he appealed or even attempted to appeal the denial of the documents under the appropriate statute. N.Y. Pub. Officers' Law § 89(4). If a mistake had been made regarding the year, it is clear that Log Book entries relating to a search that did not take place in 2006 would not have existed. Plaintiff's failure to attempt to remedy the situation may be the problem with production of the records.[27]

Thus, plaintiff's motion to supplement will be denied, both as to the claims and as to the addition of proposed defendant Paquin.

### G. *Motion for "Judicial Intervention"*

On December 12, 2007, plaintiff filed a motion for "judicial intervention." (Dkt. No. 33). Defendants have responded in opposition to the motion. (Dkt. No. 34). In this motion, plaintiff essentially asks the court to order the defendants to help plaintiff identify "John Doe." This would be the equivalent of a motion to compel discovery. Plaintiff may attempt to obtain the records that he seeks through discovery in this case. He did not need to file a FOIL request with the facility. However, a motion to compel is premature at this time. As defendants point out, their pending motion to dismiss would have been a basis for opposing court intervention with

---

**27.** Additionally, with respect to any allegations of retaliation, plaintiff does not claim that he exhausted his administrative remedies against either Paquin or defendant Woods. Under the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), plaintiff must exhaust his administrative remedies. The PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir.2004). Exhaustion is an affirmative defense that must be raised by defendants. It is the defendants' burden to show that plaintiff has failed to exhaust, and that there are some exceptions to the exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) (exhaustion not a jurisdictional prerequisite); *Giano v. Goord*, 380 F.3d at 675–76 (some exceptions apply). Thus, although plaintiff has not alleged that he exhausted his administrative remedies with respect to this final claim, failure to exhaust is not a basis for denying the motion to supplement.

respect to the identification of "John Doe." (Dkt. No. 34).

Because defendants' motion will be denied in part, and will allow plaintiff to file the proposed amended complaint in part, with the remaining claims, discovery will be able to proceed. Plaintiff may then ask defense counsel for discovery without intervention from the court. Plaintiff has never simply made a request to defense counsel for the Log Book entries for the appropriate date. Prior to filing any motion to compel discovery, plaintiff must make such request in good faith.

### III. CONCLUSION

Plaintiff's original complaint, nor the proposed amended complaint state any claim against defendant Woods. Plaintiff's motion to amend to add defendants Goord, Eagen, and Paquin, together with any claims regarding plaintiff's FOIL issue will be denied as futile. Plaintiff's motion to amend to add defendant Bezio, together with any claims that he failed to remedy the alleged retaliation by defendant Peary will be granted. Defendants' motion to dismiss plaintiff's religion and retaliation claims as against defendants Barr, Doe, Peary, and Bezio will be denied. Finally, plaintiff's motion for "judicial intervention" will be denied.

THEREFORE, it is

ORDERED, that

1. Plaintiff's motion to amend and supplement his complaint (Dkt. No. 20) is GRANTED as to the First, Second, Third, Fourth, and Fifth Causes of Action against defendants Barr, Doe, Peary, and Bezio; and DENIED as to the Second, Fourth, Sixth, and Seventh Causes of Actions against defendants Woods, Goord, Eagen, and Paquin;

2. Thus, remaining in the amended complaint are the First, Second, Third, Fourth, and Fifth Causes of Action against defendants Barr, Doe, Bezio, and Peary;

3. Defendants' motion to dismiss the remaining causes of action in the amended complaint against defendants Barr, Peary, and Bezio is DENIED;

4. Defendants Barr, Peary, and Bezio shall file and serve an answer to the First, Second, Third, Fourth, and Fifth Causes of Action in the amended complaint on or before March 28, 2008; and

5. Plaintiff's motion for "judicial intervention" (Dkt. No. 33) is DENIED.

IT IS SO ORDERED.